Norman **SIEGEL**

v.

**The FIRST PENNSYLVANIA BANKING
AND TRUST COMPANY**

and

**Food Fair Stores, Inc.**

**Civ. A. No. 29583.**

United States District Court
E. D. Pennsylvania.

Dec. 21, 1965.

Robert Abrahams, of Abrahams &
Loewenstein, Philadelphia, Pa., for plaintiff.

Philip P. Kalodner, of Shapiro, Stalberg, Cook, Murphy & Kalodner, Philadelphia, Pa., for defendant.

BODY, District Judge.

Plaintiff, an Illinois citizen, was an employee of the defendant, Food Fair Stores, Inc. ("Food Fair"), a Pennsyl-

vania corporation, from 1946 until 1960. Beginning in August 1947 he worked as a cattle buyer in the Chicago market for Food Fair's slaughtering plant in Elizabeth, New Jersey, and eventually advanced to the position of head Chicago cattle buyer. Plaintiff resigned from his employment on February 1, 1960 to work for the Harold Shannon Company ("Shannon"), purchasing cattle on a brokerage basis for various plants, some of which were allegedly in competition with Food Fair's Elizabeth plant in the wholesale meat business. [N.T. 3–12, 125]

During his fourteen years of continuous employment by Food Fair plaintiff accrued benefits under Food Fair's Incentive Bonus and Retirement Plan ("Plan"). Defendant, First Pennsylvania Banking and Trust Company ("Trustee") is the legal trustee under said Plan.

The Plan itself is a non-contributory profit-sharing plan voluntarily established by the Company for the benefit of its executive officers and certain other salaried employees. The Company has agreed to pay to the fund a certain percentage of its annual profits so long as that Plan remains in effect. This fund is held by the defendant Trustee and administered by an Advisory Committee consisting of five members, three appointed by the Company and two by participating employees. The fund is invested through the purchase of annuities, the purchase of insurance contracts on the lives of the employees and in other investments. The employee's beneficial holdings are typically paid to him at his retirement, or to his beneficiary if death occurs prior to retirement. The Plan does, however, provide (Article II, section 6):

> "The interest of each participant shall become vested in him after ten (10) years of participation in the Plan, including as part of the ten (10) years the sixty (60) month period of eligibility for admission to the Plan; and shall be paid over to him or for his account at the times and in the manner stipulated herein."

The Plan further provides that the Committee has the right to terminate the interest of any beneficiary under the Plan upon a finding that he has, among other things, participated in any fraud or dishonesty toward the Company, or has "intentionally done any other act materially inimical to the interests of the Company."

Several months prior to resigning plaintiff announced his decision to seek other employment. Shortly after he actually left Food Fair, the Advisory Committee decided that he had entered into competition with Food Fair and therefore determined that plaintiff had " * * * done * * * an act materially inimical to the interests of the Company." The Committee thereupon terminated all rights of the plaintiff to any benefits under the Plan and any interest in assets held in connection with the Plan. To protect his interest in the annuity contracts purchased for him, plaintiff was allowed to purchase these from the Trustee.

Plaintiff alleged that the action of the Committee was improper and instituted this civil action against Food Fair [1] and the Trustee to recover his interest in the assets of the Plan which had been allocated to him during the course of his employment, including the return of the purchase of the cash surrender value of the life insurance policies.

Defendants moved to dismiss the Complaint for failure to state a claim upon which relief could be granted pursuant to Federal Rule of Civil Procedure 12(b) (6). This motion, together with accompanying affidavits, was treated as a motion for summary judgment and was denied by the Honorable Joseph S. Lord III in an Opinion filed on December 12,

---

1. Food Fair Stores, Inc. is no longer a party to this action since a Directed Verdict was entered in its behalf by agreement of counsel at the conclusion of all testimony in the case.

1961. [Siegel v. First Pennsylvania Banking & Trust Co., 201 F.Supp. 664 (E.D.Pa.1961)] Judge Lord held that the Plan constituted a contract upon which a cause of action could be based and further found that an issue of fact existed as to whether or not the Committee's action was without reasonable basis.

Subsequently the case was tried for five days before this Court and a jury, at the close of which the jury rendered a verdict for plaintiff in the amount of $30,351.85.[2] Judgment was entered on the verdict and defendant trustee, First Pennsylvania Banking and Trust Company, filed its Motions for Judgment N.O.V. and for a New Trial which are now before the Court.

### I.

Defendant Trustee's first contention is that Judgment N.O.V. should be entered in its behalf because there is no evidence in the record to support a finding that the Food Fair Advisory Committee abused its disrection or acted without a reasonable basis in its determination.

■ The Trustee claims that the evidence shows that plaintiff's resignation to compete could be considered "inimical" and that the Committee's action showed no ill will or bad faith. In response to this argument, plaintiff points to the fact that Mr. Stein, the President of Food Fair and Chairman of the Committee, told him in advance of his resignation that if he left the Company to go with Shannon he would lose his rights under the Plan. (N.T. 188, 190) Plaintiff also relies on the fact that Mr. Silver and Mr. Cohen, both of whom were Food Fair executives and members of the Committee, indicated that he would lose his interest if he took employment with Shannon Company. We think this evidence is sufficient to warrant a finding by the jury that if they believed this testimony, any subsequent formal action by the Committee was a mere "rubber stamp" and indicated an abuse of discretion and bad faith on the part of the Committee.

Furthermore, there was no clear evidence that plaintiff entered into competition with Food Fair after he left their employment. He became a wholesale cattle broker engaged in the business of buying cattle for anyone in the United States including Food Fair. (N.T. 13, 14, 129)

■ Finally, it is our opinion that the Court's interrogatory to the jury did not mislead them into substituting their own judgment for that of the Committee in violation of the rule set forth in Judge Lord's Opinion, supra. That interrogatory reads as follows:

"Did the Food Fair Advisory Committee abuse its sole discretion when it determined that the plaintiff, Norman Siegel, lost his vested rights in the Plan because he had intentionally done an act materially inimical to the interests of Food Fair?"

The interrogatory set forth above clearly does not ask what the members of the jury would have determined plaintiff's rights to be, but rather whether they believed that the Committee, in fact, abused its discretion. The language used by the Court is obvious, the words mean what they say, and we therefore find no merit in this contention. (See also Charge, 398, 406)

### II.

Defendant's request for a new trial on the grounds that the verdict was against the weight of the evidence is also without merit. The Court explained to the jury the precise nature of plaintiff's burden of proof (Charge, 396) and we are satisfied that there was sufficient evidence in the record on which the jury could base

---

2. All counsel agreed that this amount included both the principal and applicable interest to which plaintiff was entitled, if he had received the fund over a period of five years subsequent to his leaving. In February 1960 the principal amount of plaintiff's share in the fund was $26,-722.64 and the increment added thereto was predicated upon a return of the principal sum over the five year period, thereby diminishing the interest figure to an average of around three percent. (N.T. 321, 322, 335, 336, 359–61)

its conclusion that plaintiff had sustained his burden under the test laid down in Menke v. Thompson, 140 F.2d 786 (8th Cir. 1944)

### III.

The Trustee's next ground in support of its motion for a new trial is that the Court's interrogatory quoted earlier was prejudicial since it asked whether the Committee "abused its sole discretion" instead of asking whether the Committee exercised good faith and honest judgment in accordance with the rule of the Menke case, supra. We do not agree. We think that the jury clearly understood the legal test involved both from the phrasing of the interrogatory itself and from the jury charge as a whole. (Charge, 397)

The wording of the interrogatory demonstrates the Court's desire to utilize simple, though not misleading, phraseology and did not result in giving the jury an erroneous legal standard. (Charge, 406, 407)

■ In addition, we conclude that defendant has misplaced its reliance upon the Menke decision for the proposition that the Committee was entitled to abuse its discretion if it did so in good faith while exercising honest judgment. At most, this proposition stems from a negative inference drawn from that case—an inference which we do not accept.

### IV.

■ Defendant next argues that it is entitled to a new trial because the Court excluded testimony that the Committee had previously divested employees who competed with Food Fair after they resigned from the Company. (N.T. 262–280) The record reveals that during the course of the trial the Court sustained objections of both parties on the ground of relevancy when they attempted to introduce testimony pertaining to prior actions of the Committee which determined other employee's rights under the Plan. This evidentiary ruling was intended to limit testimony to matters dealing with one particular employee, the plaintiff, and one particular incident, the one in

issue before the Court. Such a ruling in no way constitutes prejudicial error justifying a new trial.

### V.

■ Trustee also points to certain alleged prejudicial statements made by plaintiff's counsel in his summation speech to the jury. (N.T. 369, 379–380) The Court refused defendant's motion for withdrawal of a juror (N.T. 381–382), but the record shows that the Court specifically cautioned the jury that they alone were to weigh all of the testimony and credibility of witnesses and should disregard any slanted or incorrect conclusions by either counsel in their closing speeches. (Charge, 398–399)

### VI.

The final contention of the defendant is that Judgment N.O.V. should be entered in its behalf because the Court excluded its exhibit marked "J–2". This exhibit is an amendment to Section A, paragraph 2 of the original Plan and was adopted by the Advisory Committee on June 7, 1960, four months after plaintiff's resignation. The amendment, if effective, would either deprive plaintiff completely of his accrued interest in the Plan until he reaches the age of sixty-five or, in the alternative, entitle him to an award of only twenty percent of that interest ($5,344.53) at the present time.

■ Article VI, section 4 of the original Plan (p. 14, Plan) provides that an amendment cannot abridge or impair any rights which have accrued at the time of such amendment. It is clear that plaintiff's rights in the Plan were vested as of the date of this amendment. Furthermore, Food Fair's contractual obligations were breached, if at all, as of February 1960 when the Committee divested plaintiff of his rights. Since plaintiff's rights must be determined as of the time they accrued, we conclude that any amendment enacted subsequent thereto, as the one in question was, can in no way affect his interest. For these reasons we find that the Court properly refused to admit into evidence defendant's exhibit "J–2".

## ORDER

And now, this twenty-first day of December, 1965, it is ordered that the Motions of defendant, First Pennsylvania Banking and Trust Company, for Judgment N.O.V. and for a New Trial be and the same are denied.