JOHN T. RUSSELL, PLAINTIFF-APPELLANT, v. PRINCETON LABORATORIES, INC., A CORPORATION OF NEW JERSEY, G. MINOT D'ARCY, TRUSTEE, WILLIAM KLEINBERG, RUTH L. KLEINBERG AND EDITH GUERTLER, AS MEMBERS OF THE ADVISORY COMMITTEE OF PRINCETON LABORATORIES EMPLOYEES PROFIT SHARING TRUST, DEFENDANTS-RESPONDENTS.

Argued March 20, 1967—Decided July 10, 1967.

*Mr. Michael F. Spicer* argued the cause for appellant (*Messrs. Jamieson, Walsh, McCardell & Moore,* attorneys).

*Mr. William Miller* argued the cause for respondents.

The opinion of the court was delivered by

WEINTRAUB, C. J. This case involves a dispute as to the amount payable to an employee from an employees' profit-sharing trust upon the termination of his employment. On cross-motions for summary judgment, the trial court found against the employee. The Appellate Division affirmed, and we granted certification. 47 *N. J.* 574 (1966).

The trust was created in the light of section 401 of the Internal Revenue Code of 1954, 26 *U. S. C. A.* § 401, to obtain the tax advantage it permits the employer and the employees. The indenture provides the trust "is created for the exclusive benefit of the employees of the Corporation to compensate and reward them for loyal and faithful service." The employer's contributions, fixed at a percentage of annual earnings, are allocated upon a set formula among the participating employees (those who were employed when the trust

was created or who have completed two years of continuous employment).

Although the benefits so earned by the employees constitute deferred compensation, the plan nonetheless contemplates a loss of earned credits in certain eventualities. These losses are described in the trust indenture as "forfeitures." In the case before us the deferred compensation credited to plaintiff at the time his employment was terminated was $11,613.58, but defendants contend only $4,589.45 was "vested," or in other terms, that $7,024.13 was "forfeited."

In outline, these are the contentions of the parties: Defendants say plaintiff incurred the forfeiture under the terms of the trust indenture because he left his employment voluntarily, whereas plaintiff, invoking other provisions, says he was entitled to the full amount either (1) because he was totally and permanently disabled or (2) because his separation resulted from neither a discharge for "cause" nor a "voluntary" quit and hence constituted an "other discharge" within the meaning of the trust instrument. Upon either thesis, plaintiff would suffer no forfeiture. Defendants rely also upon the decision of the "Advisory Committee" which the indenture says "shall be final," while plaintiff assails the decision as arbitrary and therefore of no binding effect. We will set forth the provisions in more detail after stating the facts disclosed on the cross-motions for summary judgment.

Plaintiff was employed by the corporation continuously from April 1955 to March 6, 1964. His final rate of compensation was $145 per week plus a yearly bonus of $1,000. For about a year prior to the termination of employment, plaintiff suffered from a pulmonary difficulty, resulting in his hospitalization on February 14, 1964. His illness being traced to certain exposures at the place of work, his doctors advised that the exposures had to be terminated. This is not disputed. On March 6, the date of termination, plaintiff met with Dr. Kleinberg, the president of the company. Plaintiff's affidavit says that after telling Dr. Kleinberg of the medical report:

"I informed Dr. Kleinberg that I was ready and willing to continue my employment in some other capacity which would not expose me to the products responsible for my condition. We discussed other possible positions for me and Dr. Kleinberg told me, following this discussion, that there was no other work available and that it would not be possible to transfer me to another job. I asked Dr. Kleinberg, in substance, if that meant that there was no job for me at Princeton Laboratories, Inc., and he, in substance, agreed."

In response Dr. Kleinberg's affidavit acknowledges receipt of the medical opinion and says:

"* * * Plaintiff thereupon requested a change of job assignment within the laboratory, so as to separate him from the substances which were the alleged cause of his illness. I explained to him that there were no other jobs or work available which would not bring him into contact with these same substances. He then indicated that he would no longer work at the laboratory because of the effect on his health, and his employment was terminated."

Article XI of the indenture covers "Severance of Employment." Paragraph (A) deals with "Forfeiture on Discharge for Cause" and provides for a total forfeiture in that event. Paragraph (B) deals with "Forfeiture on Voluntary Severance," and provides for partial forfeiture graduated by the years of service. This is the provision defendants invoke. Paragraph (C) deals with "Payments on other Discharge," and calls for full payment:

"Upon the discharge of any Participating Employee by the Corporation for any reason, other than the reasons set forth in paragraph (A) and (B) of this article * * *."

Paragraph (A) defines "cause" to be (1) insubordination, gross inefficiency, proven dishonesty or commission of a misdemeanor or felony, or (2) the failure to turn over records or data belonging to the corporation or diversion of its secrets and the like, whether such failure or act occurs upon or following severance of employment. Paragraph (B) does not define "voluntary severance."

The remaining provision pertinent to the amount payable is paragraph (G) of the same article, which deals with severance of employment because of "Total and Permanent Disability." It provides for payment in full if "such participant is mentally or physically disabled for further *performance of duty* and * * * such disability is likely to be permanent." Plaintiff emphasizes the words we have italicized and contends that the frame of reference is ability to perform the duty of employment *with this employer,* without regard to the impact of the disability upon capacity for other work. Plaintiff in fact obtained employment in another field, although at a lower rate of pay.

We think plaintiff is clearly correct with respect to both of his contentions. It must be remembered that we are not dealing with a mere gratuity, to be bestowed upon such objects of the donor's bounty as the donor or his trustee may select. On the contrary, the trust indenture represents a hard-headed business device to attract and to hold employees. As the indenture itself says, the purpose is to "compensate and reward * * * for loyal and faithful service." Favorable tax treatment is accorded upon the premise that the profit-sharing plan involves compensation. The Federal Tax Regulations speak of the sum payable as "deferred compensation." *Treas. Reg.* § 1.401-1(b)(ii) (1967). When the employee renders service in response to the promise of the trust plan, he acquires a right no less contractual than if the plan were expressly bargained for. Annotations, 81 *A. L. R. 2d* 1066, 1070 (1962), and 42 *A. L. R. 2d* 461, 463 (1955); *Hindle v. Morrison Steel Co.,* 92 *N. J. Super.* 75, 83 (*App. Div.* 1966); cf. *Anthony v. Jersey Central Power and Light Co.,* 51 *N. J. Super.* 139, 143-147 (*App. Div.* 1958). The question, then, is whether the employee should suffer a forfeiture of something he has earned. Forfeiture being disfavored, we should take any tenable view of the indenture to avoid it. Indeed, these plans are to be liberally construed in favor of the employee. *Frietzsche v. First Western Bank & Trust Co.,* 168 *Cal. App. 2d* 705, 336 *P. 2d* 589, 590 (*D. Ct. App.* 1959);

*Voigt v. South Side Laundry & Dry Cleaners, Inc.*, 24 *Wis. 2d* 114, 128 *N. W. 2d* 411, 413 (*Sup. Ct.* 1964).

.We recognize that although the indenture states the trust is created "for the exclusive benefit of the employees," nonetheless the employer intended by the forfeiture provisions to further its own continuing needs. Specifically, the employer sought by the partial forfeiture provision to immobilize an employee notwithstanding a more attractive opportunity elsewhere. But that purpose can only be served if the employee is still useful. It would run against the grain of the arrangement to impose a forfeiture when the employee is no longer productive because the work has a grave impact upon his health.

■ Hence we have no doubt the phrase "mentally or physically disabled for further performance of duty" in paragraph (G) refers to the work demand of employment with this employer, and to nothing else. *Cf. Bradley v. Pritchard*, 254 *N. C.* 175, 118 *S. E. 2d* 422 (*Sup. Ct.* 1961). It is irrelevant to the sense of the situation to ask whether the employee can earn a living elsewhere.

■ And so also it is unreasonable to say there was a voluntary severance within the meaning of paragraph (B). That provision contemplates a forfeiture if the employee chooses to go elsewhere notwithstanding his continued usefulness to the employer. It does not fairly embrace a situation in which the employee can stay on only with a work-connected threat to his life or health. There being no other job opportunity with this employer free of that threat, it was undeniably to the economic benefit of the employer that the employment be ended, for continued exposure to the irritants of the work would doubtless subject the employer to liability under the workmen's compensation law. When both the employer and the employee must agree that continued employment would be against their respective interests, it would be absurd to say that a forfeiture of the employee's earnings should turn upon which one outlasted the other in a relationship that could not endure. Common sense called

for an agreement to terminate, and that is precisely what happened according to a fair reading of the affidavits. Plaintiff did not quit and he was not fired. Rather the parties agreed the employment had to end. There was an "other discharge" within the meaning of paragraph (C), and hence, as that paragraph rationally provides, no forfeiture ensued.

The remaining question is whether plaintiff is bound by the decision of the Advisory Committee that he severed the employment voluntarily. The indenture establishes a committee consisting of the president of the corporation and two participating employees, and provides that:

"The Advisory Committee shall have complete control of the administration of the profit sharing plan herein embodied with all powers necessary to enable it to properly carry out its duties in that respect. Not in limitation, but in amplification of the foregoing, such Committee shall have the power to construe the said plan and to determine all questions that shall arise thereunder, and shall also have all the powers elsewhere in this instrument or the trust agreement conferred upon it. It shall decide all questions relating to the eligibility of employees to participate in the benefits of the Trust Fund. All disbursements by the Trustee, except for the ordinary expenses of administrations of the profit sharing trust, shall be made upon and in accordance with the written instructions of the Advisory Committee. The decision of the said Committee upon all matters within the scope of its authority shall be final. * * *"

■■ Plaintiff points out that the members of the committee have a dollar interest in their decisions since the sums forfeited are allocated among the remaining participating employees whom plaintiff estimates to number about 25. In addition, notwithstanding the evident corporate interest in these decisions, two of the three members of the committee are the president and his wife. We note too that there was no semblance of a hearing before the committee and nothing to indicate upon what facts or thesis the committee acted. This setting does not encourage judicial deference. See *Ellis v. Emhart Mfg. Co.*, 150 *Conn.* 501, 191 *A. 2d* 546 (*Sup. Ct. Err.* 1963); *Patton v. Babson Statistical Organization*, 259 *Mass.* 424, 156 *N. E.* 534 (*Sup. Jud. Ct.* 1927).

At any rate, where an arrangement gives rise to contractual rights, as distinguished from a mere hope for a gratuity, the majority of the courts hold that provisions purporting to give finality to corporate or committee decisions will not support arbitrary action. Annotation, 81 *A. L. R. 2d* 1066, 1069 (1962) ; *Siegel v. First Pennsylvania Banking & Trust Co.,* 201 *F. Supp.* 664, 669 (*E. D. Pa.* (1961), and 248 *F. Supp.* 249 (*E. D. Pa.* 1965) ; *Montgomery Ward & Co. v. Reich,* 131 *Colo.* 407, 282 *P. 2d* 1091 (*Sup. Ct.* 1955) ; *Bird v. Connecticut Power Co.,* 144 *Conn.* 456, 133 *A. 2d* 894 (*Sup. Ct. Err.* 1957) ; *Forrish v. Kennedy,* 377 *Pa.* 370, 105 *A. 2d* 67 (*Sup. Ct.* 1954) ; *cf. Hurd v. Illinois Bell Tel. Co.,* 136 *F. Supp.* 125, 154–155 (*N. D. Ill.* 1955).

 A contract should not be read to vest a party or his nominee with the power virtually to make his promise illusory. Especially must this be so when a forfeiture will follow. It is appropriate to apply the rule to which a trustee is subjected, that notwithstanding the apparent finality with which the instrument clothes his action, he must stay within the bounds of a reasonable judgment. *Bogert, Trusts and Trustees* (*2d ed.* 1960), § 560, *pp.* 120–121; 2 *Scott, Trusts* (*2d ed.* 1956), § 187, *p.* 1375; *Taylor v. McClave,* 128 *N. J. Eq.* 109 (*Ch.* 1940) ; see *Judge v. Kortenhaus,* 79 *N. J. Super.* 574, 586–587 (*Ch. Div.* 1963). *Cf. Terminal Construction Corp. v. Bergen County,* 18 *N. J.* 294, 316–317 (1955). Thus measuring the action of the Advisory Committee in the case before us, we have no doubt that the decision rests upon an unreasonable view of the indenture and the facts.

Plaintiff is entitled to prevail. The judgment is reversed and the matter remanded to the trial court for the entry of judgment in accordance with this opinion.

*For reversal and remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For affirmance*—None.