533 P.2d 1188

**PADDOCK POOL CONSTRUCTION COMPANY, an Arizona Corporation, Appellant,**

**v.**

**Joseph MONSEUR, Appellee.**

**No. I CA–CIV 2463.**

Court of Appeals of Arizona, Division 1, Department A. April 17, 1975.

**452**

Jennings, Strouss & Salmon, by Charles E. Jones, Phoenix, for appellant.

Daughton, Feinstein & Wilson, by Allen L. Feinstein, Phoenix, for appellee.

OPINION

DONOFRIO, Judge.

This is an appeal by Paddock Pool Construction Company from a judgment against it and in favor of Joseph Monseur for the sum of $2,853.25. Monseur had sought certain monies from his former employer, Paddock Pool, and its trustee, American Industries Retirement Co. under Paddock's deferred profit-sharing plan.

The case was tried without a jury, and at the conclusion of the trial the court made findings of fact and conclusions of law and rendered its judgment against Paddock. The trustee, American Industries Retirement Co., is not a party to this appeal, but has agreed to abide by whatever decision is reached by this Court. Its position is merely as custodian of the funds in question.

We are called upon to determine whether the record contains sufficient evidence on which to support the trial court's finding that the administrative committee of the Paddock profit-sharing plan did not comply with the terms of the forfeiture of the profit-sharing plan, and acted in bad faith in its determination to forfeit Monseur's vested interest in the plan.

The facts indicate that Monseur was employed by Paddock as a swimming pool salesman for approximately 12 years prior to the time that he voluntarily quit on December 9, 1971. His reason for leaving Paddock was a disagreement with the management over a newly instituted method of compensating the pool salesmen. Thereafter on December 21, 1971, Monseur became an employee of Master Pools, a competitor of Paddock.

The Paddock profit-sharing plan which was in effect provided for contributions from the employees and the employer, Paddock, to a savings account type of arrangement managed by the Trustee. That portion of the account contributed by Monseur was returned to him by the Trustee of the account after he left Paddock, but the portion contributed by Paddock on behalf of Monseur was declared forfeited. The forfeiture decision was made by the committee set up under the plan to administer it. The committee, which consisted of officers of the corporation and certain employees, found that Monseur forfeited this company-contributed portion of the account due to alleged violation of Article 8A(J)(1) of the plan which stated, in part:

"If a Participant's employment is terminated for the purpose of engaging in a

business . . . which is in direct competition with the Employer in such manner as to threaten economic loss to the Employer as a result of such Participant's activity, . . . then . . . any such Participant shall forfeit his entire interest in the trust fund save and except any amounts which may be credited to him . . . by reason of his personal contributions. . . ."

In his findings of fact and conclusions of law the trial judge found that Monseur had not terminated his employment with Paddock *for the purpose* of engaging in a competitive business, but had voluntarily terminated his employment because of a dispute over a new method of compensation. The trial judge also found that the determination by the administrative committee that Monseur's account should be forfeited was not made in good faith.

We hold that the record supports the findings and conclusions of the trial court and that they were reasonably made.

■ We think that forfeiture provisions in a pension and profit-sharing plan such as those in Article 8A(J)(1) should be liberally interpreted in favor of the employee and against the employer. *See* 60 Am.Jur. 2d, Pension and Retirement Funds, Section 75, page 952; Russell v. Princeton Laboratories, Inc., 50 N.J. 30, 231 A.2d 800 (1967). In the instant case the trial court found that Monseur did not leave *for the purpose* of engaging in competitive employment with Paddock, but it seems he was incidentally offered the job with Master Pools later. In any case, the record indicates that the committee did not determine that he left for the purpose of competing with Paddock, nor did the committee determine that Monseur's actions were done "in such manner as to threaten economic loss to the employer" as required by Article 8A(J)(1) of the plan. We see no reason to substitute our analysis of the record for that of the trial judge who considered all the evidence and observed the witnesses as they testified at trial, especially

where his analysis was reasonably made as was done in the instant case.

■ Although not necessary for our determination of this matter, we find that the record amply supports the trial court's finding that the committee's actions toward Monseur were not made in good faith.

■ There seemed to be conflict of testimony (or at least confusion) as to 1), when the meeting of the committee was held where the forfeiture was determined; 2), who attended the meeting; and 3), what discussions were held. There was ample evidence to support the trial court's finding that the purpose of Monseur's leaving Paddock was because of a dispute with management over a new method of compensation. We also think it important that one of the members of the committee was not given notice of the meeting, nor did he attend; also that no written minutes of the meeting were made. We think that the plain language of the plan required the committee to make . a determination that Monseur left *for the purpose* of competing with Paddock. The committee seemingly interpreted the plan to mean that any subsequent employment of Monseur with a competitor of Paddock would be enough to cause a forfeiture. We find that this interpretation made by the committee is unreasonable and contrary to the plain language of the plan. The trial court was correct, in light of the record, in finding a lack of good faith exercised by the committee, and the record clearly shows no basis upon which the committee could order Monseur's interest forfeited.

Affirmed.

OGG, P. J., concurring.

FROEB, Judge (concurring specially):

There is nothing in the Profit Sharing Plan ·which renders the fact finding function ·of the Administrative Committee conclusive to the extent that it is beyond review in a court proceeding. Applying this principle to the facts of this case, the de-

termination by the Administrative Committee as to why Monseur terminated his employment was not immune from judicial review. The trial court found by a preponderance of the evidence that Monseur terminated his employment because of a dispute over a new method of compensating salesmen and not because of any purpose to engage in a competitive business. There is reasonable evidence in the record to support this finding. I would therefore affirm the judgment on this ground.

Whether the Administrative Committee acted in good faith or bad faith is important only to the question of the Administrative Committee's construction and interpretation of the provisions of the Profit Sharing Plan. If there is ambiguity as to what the provisions of the Plan mean, the Committee must interpret them as provided by Article 9.4(b) which states:

"[The Committee shall have . . . the right, power and authority] to construe all terms, provisions, conditions, and limitations of the Plan, and its construction thereof made in good faith shall be final and conclusive on all parties at interest."

It is the interpretation function only which is beyond judicial review if made in good faith.

In my opinion the Administrative Committee incorrectly called into operation its interpretative function in deciding to forfeit Monseur's interest under Article 8A(J)(1), the pertinent portion of which reads as follows:

"If a Participant's employment is terminated for the purpose of engaging in a business . . . which is in direct competition with the Employer in such manner as to threaten economic loss to the Employer as a result of such Participant's activity, . . . then . . . any such Participant shall forfeit his entire interest in the trust fund save and except any amounts which may be credited to him . . . by reason of his personal contributions."

The words "for the purpose of . . ." cannot be ignored. No interpretation made by the Committee, even in good faith, can alter the plain language of the provision. It is clear that the forfeiture test is dependent upon the "purpose" of the employee in terminating his employment. It is not within the province of the Administrative Committee to substitute another standard, namely the "subsequent taking of employment with a competitive company." It is for this reason that the question of whether the Administrative Committee made its "interpretation" in good faith or bad faith is of no importance to this case. It does not matter what its motives were. It was merely incorrect in undertaking to construe Article 8A(J)(1), since as written and as applied to Monseur it required no construction.

As the court found as a fact that Monseur did not terminate for the "purpose" of accepting competitive employment, there was no ground for forfeiture and the judgment of the trial court should be affirmed.