**Barbara A. HART, Plaintiff,**

v.

**UNITED BROTHERHOOD OF CARPEN-
TERS & JOINERS OF AMERICA LO-
CAL NO. 626 et al., Defendants.**

Superior Court of Delaware,
New Castle County.

Submitted Sept. 22, 1975.

Decided Feb. 19, 1976.

James M. Mulligan, Jr., and N. Rich-
ard Powers, Connolly, Bove & Lodge, Wil-
mington, for plaintiff.

Clair John Killoran and J. R. Julian,
Killoran & Van Brunt, Wilmington, for
defendants.

LONGOBARDI, Judge.

This is a motion for summary judgment
by Plaintiff Barbara A. Hart asserting
that there are no material issues of fact in
dispute and as a matter of law she is enti-
tled to $10,000 in death benefits from De-
fendant's pension trust fund as a result of
her husband's death.

According to the stipulated facts, by a
collective bargaining agreement effective
May 16, 1967, Defendant United Brother-
hood of Carpenters and Joiners of Ameri-
ca, Local 626 ("Local 626") and Defendant
Allied Construction Industries of Dela-
ware, Inc. ("Allied") established a Retire-
ment Plan for members of Local 626. The
Plan is financed by contributions of partic-
ipating employers of Allied to a jointly
managed trust fund created by an Agree-
ment and Declaration of Trust. The Plan
provides for monthly pensions to covered
employees at rates that vary depending
upon years of service.

By amendment in 1969, a new section
was added to provide death benefits to an
employee's named beneficiary upon the
death of the employee prior to his retire-
ment date.

Myles A. Hart, Plaintiff's decedent, was
a member of Local 626 and employed by
Cantera Construction Co. (a participating
employer under the Plan) from June, 1949
to July, 1971. Under the terms of the
Plan, Hart had fifteen (15) years of Cred-
ited Past Service as defined by paragraph
15 of the Plan and six (6) years of Credit-
ed Future Service as defined by paragraph
16 of the Plan. Hart left Cantera in July,
1971 to go into business for himself and on
January 9, 1973 he died suddenly.

His widow made a timely request upon
the trustees of the Fund to receive $10,000
in death benefits under section 10 of the
Plan. There is no dispute that Hart had

twenty-one (21) years of Credited Service under section 17 and no dispute that up until July of 1971 he was a fully eligible employee under section 2.[1] The question at issue is whether Plaintiff is entitled to death benefits when her husband was at the time of his death unemployed by a participating employer.

■ The issue in this summary judgment motion, in the more restrictive view, is one of contract language interpretation; that is, the vesting of benefits in pension and retirement plans. If upon analysis of the specific language of the Retirement Plan and the Trust Agreement the Court were to conclude that the language indicated clearly that the death benefit provision was to cover only actively employed employees or those fully eligible under section 2 who died prior to their retirement date, that would be the extent of the inquiry. However, if despite close examination the Court cannot discern a clear contractual directive, the Court must resolve the ambiguity by endeavoring to discover the intent of the parties, and further to decide the question in light of any weighty public policy. This could very well defeat the motion for summary judgment.

Section 10.1 "Death Benefits" as amended reads:

"10.1. Upon the death of any Employee prior to his retirement date, a death benefit will be paid to Employee's beneficiary as follows:

"(a) $1000.00 up to ten years of credited service;

"(b) $3000.00 after ten years of credited service;

"(c) $5000.00 after fifteen years of credited service;

"(d) $10,000.00 after twenty years of credited service.

"In order for an Employee's beneficiary to receive this death benefit, the beneficiary must elect to receive the death benefit within one year of the date of death of the Employee, otherwise, such rights to such death benefit are waived.

"This Amendment shall become effective as of May 1, 1970 . . . ."

Plaintiff's interpretation of this provision is based primarily on section 1.4's definition of employee: "Employee is any Employee of the Participating Employer whether or not he is covered by the collective bargaining agreement who performs work under the collective bargaining agreement." Defendant's emphasis is on the actively working status language, arguing that only upon the death of someone actually performing work under a collective bargaining agreement is section 10 applicable.[2] Consequently, Defendant contends Hart's self-employment would make him ineligible. Defendant's reading would necessitate the result that where, as here, an "employee" were to begin working at nineteen (19) years of age and at forty (40) after twenty (20) years as an "employee" stops active work and then dies two (2) years later prior to his retirement age, he would neither receive retirement benefits accrued nor would his beneficiary receive death benefits (since he was not an active employee at his death).

The Defendants explain the obvious loophole or inequity by claiming that the clear

---

1. 2.1. Each Employee of a Participating Employer shall be an Eligible Employee in the Plan, provided he (a) is a member of Local No. 626, or an employee working under the jurisdiction of Local No. 626 for whom regular contributions are made to the Retirement Plan, and (b) has Credited Past Service and will have completed at least 10 years of Credited Service on his Normal Retirement Date; or has no Credited Past Service and will have completed at least 15 years of Credited Service on his Normal Retirement Date.

2. The more likely need for the definition of "employee" in 1.4 is to distinguish employees from independent contractors who are, in a sense, employed by the participating employers but are definitely not under the collective bargaining agreement. *Munts v. Fitzsimmons*, 25 Ill.App.3d 109, 323 N.E.2d 153 (1975).

basis of the Plan is that "The employment relationship is the nexus between the participating employer making contributions for the benefit of his active participating employee." This theory is not supported by the general purpose of the Plan. The concept of the Retirement Plan viewed as an entirety is to give financial aid in situations where earning capacity is curtailed to those persons who have given service to the union and participating employers. There are in the Plan three (3) such recognized. conditions: (1) attainment of age 65; (2) total and permanent disability; and (3) death.

The bulk of the Plan deals with normal retirement conditions. There is no dispute that had Hart lived to sixty-five (65), he would have received his normal retirement pension (Statement of Facts No. 17) under section 5.1:

"5. Benefits on Retirement.

"5.1. Normal Retirement Benefit. An Employee shall be entitled to a Normal Retirement benefit equal to his Accrued Benefit on his Normal Retirement Date."

Even if an employee became disabled in the second situation, section 5.4 provides benefits for those persons:

"5.4. Disability Retirement Benefit. If an eligible Employee becomes Totally and Permanently Disabled and has 10 years of Credited Service, he shall be entitled to a Disability Retirement Benefit equal to his Accrued Benefit on his date of total and permanent disability."

There is no indication that a totally and permanently disabled person (defined in 1.-13) is only to recover benefits if his disablement occurred during active employment. The only conditions are ten (10) years of Credited Service and eligibility· under section 2.

Hart, at the time of his death, had contributions made for him under the Retirement Plan [3] and had Credited Past Service of twenty-one (21) years. The effect of the disability benefit provision is simply to give aid under conditions of impairment as long as there is sufficient credited service.

If the intent of the Plan is to aid those who have reached sixty-five (65) and those who are disabled, the addition of section 10, unless clearly worded otherwise, could not rationally exclude those who have met eligibility and credited service· minimums merely because they are in a time frame between active service and retirement. Consequently, the use of "employee" in section 10.1 must be read to include those actually working *and* those who have already met the eligibility and credited service requirements who are awaiting their normal retirement date.

The affidavit of Laurence Hart, deceased's brother, is relevant at this point. According to Hart's affidavit, he received from Local 626 in April, 1974, a notice upon which was printed, among other data, the phrase "YOUR PRE-RETIREMENT DEATH BENEFIT IS $5,000" apparently reflecting Laurence's fifteen (15) years of Credited Service. Considering that it had been five (5) years since he had gone into business for himself and thereby ceased "performing work under a collective bargaining agreement," this notice is signifi-· cant testimony to the fact that the intent of the Plan was to pay death benefits during the gap period between active employment and retirement age.

Further resolution of the ambiguity can be obtained from analysis of the vesting clause, section 6.1:

"6.1. Full Vesting. Subject to Section 7, an Employee who has Credited Past Service and 10 years of Credited Service

---

3. If Defendants insist that, under 2.1 the employee must be currently performing work to be eligible for benefits, the Plan becomes meaningless since only those persons who work up until the day of retirement would be covered. The drafters certainly did not intend such a result; therefore, the use of the present tense "working" is not to be given definitive meaning.

shall be fully vested in his Credited Service. Subject to Section 7, an Employee who has no Credited Past Service and who has 15 years of Credited Service shall be fully vested in his Credited Service. An Employee, or former Employee, who is so fully vested in his Credited Service and who has not elected early retirement, is eligible to receive his Accrued Benefit as of his Normal Retirement Date upon application therefor with the Trustees."

The concept of vesting of accrued benefits under pension plans rests upon basic contract law theory. The case of *Delaware Trust Company v. Delaware Trust Company,* Del.Ch., 222 A.2d 320 (1966) and *Conner v. Phoenix Steel Corporation,* Del. Supr., 249 A.2d 866 (1969), both indicate that a pension plan (particularly where it is part of a collective bargaining agreement) is consideration for continued employee service and loyalty. The vesting of accrued benefits (i. e. the guarantee that they will not be forfeited except under limited specified situations) validates consideration that might otherwise be illusory. The vesting provision of this retirement plan serves this function. The section even emphasizes the lack of forfeiture of benefits upon ceasing to work by referring to "employee or *former* employee."

By Defendants' reading section 6 out of section 10, they attempt to argue that vesting applies only to retirement benefits and not death benefits. This position cannot be sustained in view of the integrated nature of the Plan as well as the general policy arguments in favor of vesting of *all* accrued benefits. Whether the employee eventually ceases having earning capacity because of retirement, total disability or death, the very fact that he put in his twenty-one (21) years with a participating employer must be sufficient to preserve his benefits against forfeiture.

■ This is a contract not susceptible to alternative interpretation. Construing the language in the employee's favor is man-

dated by the Delaware cases of *Conner* (supra) and *Brinzo v. Phoenix Steel Corporation,* Del.Ch., 304 A.2d 66 (1973), and is the emerging policy in Pension Plan law in most jurisdictions. *Russell v. Princeton Laboratories, Inc.,* 50 N.J. 30, 231 A.2d 800 (1967). It is this Court's opinion that we should interpret pension plans against potential forfeiture (see *Paddock Pool Construction Co. v. Monseur,* 23 Ariz.App. 451, 533 P.2d 1188 (1975) and *Frank v. Day's, Inc.,* 13 Wash.App. 401, 535 P.2d 479 (1975), as well as *Conner* (supra), *Brinzo* (supra) and *Russell* (supra).

Summary Judgment for the Plaintiff is granted. It is so ordered.