NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 09-3702

———————

BRAUSER REAL ESTATE, LLC

v.

MEECORP CAPITAL MARKETS, LLC;
MICHAEL EDREI; DANIEL EDREI;
GERALD BRAUSER

Brauser Real Estate, LLC; Gerald Brauser,
                                    Appellants

———————

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 02-06-cv-01816)
District Judge: Honorable Susan D. Wigenton

———————

Argued September 14, 2010

Before: RENDELL, FISHER and GARTH, <u>Circuit</u> <u>Judges</u>.

(Filed: June 1, 2012)

———————


Jonathan C. Scott, Esq.    **[ARGUED]**
Scott & Scott
2200 Ross Avenue, Suite 5000
Dallas, TX 75201
    *Counsel for Appellants*

Daniel S. Eichhorn, Esq.
Robert L. Ritter, Esq.     **[ARGUED]**
Schiffman, Abraham, Kaufman and Ritter
P.O. Box 410
Three University Plaza
Hackensack, NJ 07602
  *Counsel for Appellees*

---

OPINION OF THE COURT

---

RENDELL, Circuit Judge.

Brauser Real Estate, LLC ("BRE") and Gerald Brauser ("Brauser") appeal the

District Court's grant of summary judgment in favor of Meecorp Capital Markets, LLC,

Michael Edrei, and Daniel Edrei (collectively "Meecorp"), and entry of final judgment

against BRE, in this breach of contract action.  We will affirm.

On September 25, 2003, Plaintiff BRE executed a Contract of Sale to purchase a

thirty-two acre commercial property in Florida.  On October 10, 2003, Meecorp presented

Brauser with a "Letter of Interest" to supply the financing for a purchase of land in the

amount of $28,000,000.  Brauser paid a non-refundable application fee of $25,000 in

exchange for Meecorp's agreement to enter into a Loan Commitment ("Commitment") to

provide funding for the purchase and development of the property.  Meecorp prepared the

first draft of the Commitment on October 21, 2003, and subsequently exchanged several

drafts and revisions with Brauser and his counsel.  From the outset, the draft Commitment

was addressed to Gerald Brauser, BRE, and Outdoor Digital, and listed Brauser as

2

individual guarantor of the Commitment Fee.

As part of the final Commitment letter, Meecorp agreed to loan up to $20,000,000 with a first mortgage lien on the property as collateral. The "Acceptance of Commitment" provision in the Commitment provided as follows:

> The commitment and all of its terms and conditions will become effective only upon delivery to this office of a signed copy of this commitment duly accepted by the Borrower, accompanied with the commitment fee installment in the amount of Six Hundred Thousand Dollars ($600,000) which is non-refundable and earned for, among other things, the commitment to provide funds and due diligence expenses.

(A-1380.) Both Brauser and Meecorp executed the final draft of the Commitment in December 2003 and Brauser made an initial Commitment Fee payment of $200,000.

The parties met in March 2004 and Brauser indicated his inability to acquire certain of the required collateral and suggested potential alternative forms of collateral. After the meeting, Meecorp memorialized its understanding that while it permitted Brauser to seek other collateral, "the Commitment Letter . . . is the instrument that drives the progress of the proposed Loan." The required collateral was not provided and the loan never closed. Brauser then requested a refund of the $225,000 paid in fees. When Meecorp refused to refund the fees and demanded payment of the balance of the Commitment Fee, Brauser filed suit in Florida state court for return of the fees. Meecorp removed the matter to the Southern District of Florida and the action was then transferred to the District of New Jersey pursuant to the Commitment's choice of forum clause. In the District Court, Meecorp asserted a counterclaim against BRE and Brauser for

3

Brauser's breach of contract, seeking the remainder of the Commitment Fee.

After the parties filed cross motions for summary judgment, the District Court granted Meecorp's motion for partial summary judgment against BRE as the $400,000 balance of the Commitment Fee was due and owing, noting that "the remaining $400,000 was *deferred* to the time of closing," and "was already earned upon the signing of the Loan Commitment." Upon Meecorp's subsequent motion for summary judgment to recover the $400,000 fee from Brauser, the court opined that genuine issues of material fact existed regarding whether: (1) Brauser individually guaranteed the entire Loan Commitment fee, and (2) alleged material changes made to schedule C discharged Brauser's liability. Before conducting a trial on these two discrete questions, the District Court granted Meecorp's *motion in limine* precluding from trial evidence unrelated to the two triable issues, preventing Brauser from contesting the validity of the Commitment and BRE's obligations thereunder. The District Court then conducted a trial on these limited questions and concluded that Meecorp never agreed to adjust the collateral beyond what Schedule C provided for in the executed Commitment, and held Brauser individually liable for the balance of the Commitment fee.

On appeal, BRE and Brauser assert several claims: (1) the District Court erred in finding that Brauser signed or initialed a collateral schedule to the Commitment and its inclusion in the Commitment served to release Brauser's guarantee claim; (2) the District Court erred by precluding Brauser from re-litigating the issue of whether Outdoor

Digital's breach obligated BRE and triggered Brauser's guarantee; (3) the District Court

erred in finding a firm commitment to lend by Meecorp; (4) the District Court erred in

finding for Meecorp on issues of performance and good faith and fair dealing; and (5) the

District Court's award of damages was excessive and should be reduced. We will affirm

the District Court's Judgment.[1]

## DISCUSSION

We review the District Court's factual findings for clear error. *Gordon v.

Lewistown Hosp.*, 423 F.3d 184, 201 (3d Cir. 2005) (citation omitted). "[W]here we are

confronted with mixed questions of fact and law, we apply the clearly erroneous standard

except that the District Court's choice and interpretation of legal precepts remain subject

to plenary review." *Id.* (citations omitted).

After completing discovery and trial proceedings, the District Court conducted a

thorough review of the documentation and ruled that Brauser executed the Commitment

and the collateral schedules attached thereto. The District Court's extensive factual

findings are supported by the evidence. The record confirms that Brauser and his counsel

---

[1]After hearing oral argument in this case, we remanded the case to the District Court for further consideration of the court's diversity jurisdiction. During the proceedings on remand, additional issues regarding the citizenship of the parties "surfaced". The District Court ultimately ruled that diversity jurisdiction did exist. We received supplemental submissions from the parties on this issue, and we agree with the District Court that Gerald Brauser's belated, inconsistent assertions are lacking in both proof and credibility, and, like the District Court, we conclude that diversity jurisdiction does exist.

actively participated in negotiating and drafting the Commitment, and subsequently signed, initialed and executed the Commitment. Accordingly, the District Court properly held that the obligations stated in the collateral schedule did not materially alter the Commitment, and that Brauser was obligated to abide by the same conditions.

Subsequent to the trial proceedings, the District Court also determined that Brauser personally guaranteed the balance of the Commitment Fee. The court conducted a six-step analysis to determine Meecorp's eligibility for a judgment against Brauser individually. The plain language of the Commitment's collateral schedule names Brauser as an individual guarantor, and states that Brauser guaranteed "payment of the remaining Balance of the Commitment Fee." As such, Meecorp possessed the right to "proceed directly against [him] as suret[y] and cannot be compelled to first sue on the primary obligation." *Salitan v. Magnus*, 145 A.2d 10, 13 (N.J. 1958). Brauser has failed to raise any persuasive arguments as to why the District Court's conclusion is incorrect based on the contractual language. Therefore, we will affirm the District Court's ruling as to Brauser's personal obligation for the balance of the Commitment fee, as further discussed below.

We next review the District Court's decision to exclude evidence on a *motion in limine* for abuse of discretion. *Houston v. Easton Area Sch. Dist.*, 355 Fed. Appx. 651, at *2 (3d Cir. 2009). The District Court granted Meecorp's *motion in limine*, precluding Brauser from introducing at trial evidence related to several issues previously decided

6

against BRE, namely, the validity of the Commitment, Meecorp's entitlement to the remaining balance of the Commitment Fee, and Meecorp's ability and willingness to perform under the Commitment. Brauser asserted that none of the aforementioned determinations were binding on BRE, Outdoor Digital, or Brauser since BRE was allegedly not contractually bound by the Commitment. Despite his protestations to the contrary, the record confirms BRE's status as a party to the Commitment: (1) Brauser brought the lawsuit on behalf of BRE, rather than Outdoor Digital; (2) the Commitment was addressed to Gerald Brauser, BRE, and Outdoor Digital; and (3) Brauser himself attested in an affidavit that BRE executed the Commitment and paid a portion of the Commitment Fee in accordance with the agreement. As such, Brauser's argument that BRE was not a party to the Commitment or guarantee is unavailing. Accordingly, we will find that the District Court did not abuse its discretion by granting Meecorp's motion.

Finally, we review the District Court's determination that Meecorp's promise to perform was not illusory and that the Commitment was a valid and enforceable agreement. As an initial matter, under controlling New Jersey law, "courts should seek to enforce contracts and avoid deeming them illusory." *Del Sontro v. Cendant Corp.,Inc.*, 223 F.2d 563, 578 (D.N.J. 2002) (*citing Russell v. Princeton Labs. Inc.*, 231 A.2d 800 (N.J. 1967)). Accordingly, "a promise is deemed illusory and unenforceable if performance is entirely optional with a promisor." *Id.* (*citing Bryant v. City of Atlantic City*, 707 A.2d 1072, 1085 (N.J. Super. App. Div. 1998)). Here, the Commitment

7

obligated Meecorp to conduct due diligence and to locate sources of funding. At the same time, the Commitment further mandated that Meecorp refund the entire Commitment Fee if it failed to successfully perform its obligations under the terms of the agreement. As such, Meecorp's obligations were not "entirely optional." *Del Sontro*, 223 F.2d at 578. Additionally, because "an implied obligation to use good faith is enough to avoid the finding of an illusory promise," *In re Cendant Corp. Litig.*, 264 F.3d 286, 300 (3d Cir. 2001) (citation omitted), we will reject Brauser's challenge to the District Court's finding of a non-illusory promise.

Similarly, the District Court correctly concluded that the Commitment was valid and enforceable upon payment of the $200,000 by BRE. In addition to the previously mentioned Acceptance of Commitment provision, which provided that the Commitment would become effective upon execution of the Loan Commitment letter and payment of $600,000, the Commitment included two relevant provisions that support the District Court's decision. First, the "Waiver of Trial By Jury" clause provided that notwithstanding the requirement to pay $600,000 at the signing of the commitment, Meecorp would accept payment in two installments – $200,000 at signing and $400,000 at closing – in consideration for the parties' waiver of a trial by jury and agreement to a Choice of Forum clause. This installment clause confirms that the deferred payment plan constituted an independent agreement between the parties to perform their full obligations under the Commitment, including payment of the entire Commitment Fee in installments.

8

Separately, the Acceptance of Commitment clause further stipulated that Meecorp would have no obligation to perform under the Commitment "unless and until this commitment letter [was] fully executed and received by Meecorp along with the *required portion* of the commitment fee." The latter language conforms with the District Court's finding that the parties anticipated payment of only a "required portion of the commitment fee" for the Commitment to become binding upon Meecorp and effective as to both parties, rather than payment-in-full upon signing. Rather than conditioning payment of the full balance upon closing, the installment agreement within the Commitment merely deferred payment of the remaining balance to a later date to provide Brauser with a favorable payment schedule. Accordingly, Brauser's execution of the agreement and payment of the "required portion" of $200,000 rendered the Commitment valid and enforceable.

In this vein, the District Court's holding regarding the parties' performance under the valid Loan Commitment is also correct.[2] As the District Court noted, the record is

---

[2]Brauser's assertion that Meecorp allegedly violated its implied duty of good faith and fair dealing is both untimely and unsubstantiated. The District Court did not address this issue in the second summary judgment order, contrary to Brauser's suggestion, nor do the various pleadings provide any evidence that Brauser previously raised this matter in the District Court. "[A]n appellate court may only review the record as it existed at the time summary judgment was entered," and appellants cannot "advance new theories or raise new issues in order to secure a reversal of the lower court's determination." *Union Pac. R. Co. v. Greentree Transp. Truck. Co.*, 293 F.3d 120, 126 (3d Cir. 2002); *see also Bacon v. Sullivan*, 969 F.2d 1517, 1521 (3d Cir. 1992) (*citing Newark Morning Ledger Co. v. United States*, 539 F.2d 929, 932 (3d Cir. 1976) ("new issue cannot be considered on appeal if it was not raised below")). Even if the question was timely, Brauser points to

devoid of any evidence supporting Brauser's assertion that Meecorp lacked the ability to perform its obligations pursuant to the Commitment. In contrast, Brauser's inability to secure the collateral prescribed for in the Commitment was clearly communicated to Meecorp during the March 2004 meeting. As such, the District Court properly held that the record sufficiently demonstrated "the absence of a genuine issue of material fact" as to Brauser's breach of the Commitment, *see generally Miller v. Indiana Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988), and appropriately granted summary judgment in Meecorp's favor.

The District Court's award of damages was similarly correct. The Commitment expressly provided that BRE – or Brauser as individual guarantor – would pay a total of $600,000 in exchange for Meecorp's bargained-for due diligence and funding, even if the payments were made in installments. The Commitment did not provide for reimbursement of a portion of the Commitment Fee if the loan was reduced, even though the Commitment expressly stated that the loan could be reduced based upon a subsequent appraisal.[3] Because the parties voluntarily agreed to a Commitment Fee of $600,000 –

no evidence adduced to support his allegation that Meecorp accepted payment without ever intending to lend funds to BRE.

[3]Brauser contends that the $600,000 Commitment Fee is unreasonable because Meecorp predicated its commitment fee claim on 3% of a $20 million loan, but subsequently reduced the alleged offer to lend to $9.9 million. Although the record includes the Final Loan Offer of $9.9 million referenced by Brauser, (JA-373), the Offer was never accepted and, is thus, of no legal effect. Other than the Commitment, which expressly provided for a $600,000 fee, Brauser did not advance any other legally-binding loan document suggestive of an alternative fee calculation.

which was never revised by agreement – we will affirm the District Court's award of damages against BRE and Brauser.

## CONCLUSION

For the foregoing reasons, we will affirm the District Court's orders in all respects.

**Brauser v. Meecorp**
No. 09-3702

GARTH, *Circuit Judge*, dissenting.

I write separately because although I agree with the majority's conclusion to the effect that Meecorp's Commitment promise is not illusory—and is thus enforceable—I cannot agree that the Meecorp Commitment on which Brauser's fee is predicated is a $20,000,000 Commitment.

Rather, as Meecorp's Final Loan Offer is no more than $9,900,000, I calculate Brauser's obligation to be $297,000 (3% of $9,900,000), of which Brauser has already paid $200,000.

Meecorp's initial letter Commitment of November 18, 2003 contemplated a loan of $20,000,000. However, Meecorp carefully conditioned its obligation to lend $20,000,000 on the appraisal of Brauser's collateral by stating "the borrower [Brauser] understands that Meecorp will inspect the collateral and Meecorp cannot and will not lend more than fifty percent (50%) of the As-Is market value of the collateral."

Accordingly, after Meecorp appraised Brauser's collateral, it withdrew its $20,000,000 Commitment in its March 2004 Final Loan Offer. In that Final Loan Offer, Meecorp stated:

> Pursuant to our commitment Letter dated November 18, 2003 . . . this letter shall constitute our Final Offer to make a loan on the terms and conditions of the Commitment, . . .
>
> A land acquisition loan of up to Nine Million, Nine Hundred Thousand dollars ($9,900,000) . . . pursuant to the Commitment and the following conditions. . .
>
> As you know, our commitment was issued for an amount not exceeding $20,000,000 limited to 50% of the 'As-Is' value of the land. . . . Meecorp ordered and received an independent appraisal and it is the opinion of the Appraiser that the "As-Is 180-day Sale Value" is $18,000,000.
>
> Therefore, we hereby agree to proceed with the initial phase of the Loan based on the terms and conditions of our Commitment . . . $9,900,000.

As Meecorp explains in its Final Loan Offer letter, it initially proposed a $20,000,000 loan predicated on the assumption that the land would appraise at a value sufficient to support such a loan. The language of the loan Commitment expressly stated that the $20,000,000 loan figure was a "ceiling," and left open the possibility that the loan amount would be decreased if the land appraised for less than what Brauser represented its value to be. Indeed, the loan Commitment stated "[t]he borrower [Brauser] understands that Meecorp will inspect the Collateral and Meecorp cannot and will not lend more than Fifty Percent (50%) of the As-Is Market Value of the Collateral. . ."

Thereafter, Meecorp conducted its own appraisal and found the land to be worth less than Brauser had represented. It was at that point Meecorp effectively withdrew its $20,000,000 Commitment proposal and replaced it with the Commitment of $9,900,000. Three percent of $9,900,000 is $297,000, and since it is undisputed that Brauser has already paid $200,000, Brauser's remaining balance is no more than $97,000.

The District Court and the majority of this court have therefore erred when they adjudged that Brauser's remaining balance was $400,000 (the remainder of a $600,000 commitment fee minus $200,000 paid by Brauser). In my view, wholly based upon the documents of record, I would hold that Brauser is obligated to Meecorp for $97,000, and no more. I therefore respectfully dissent from the majority's judgment.