SOUTHWESTERN BELL TELEPHONE CO., Appellant,

v.

Oleta GRAVITT, Appellee.

No. 15513.

Court of Civil Appeals of Texas, San Antonio.

Nov. 10, 1976.

Rehearing Denied June 1, 1977.

Foster, Lewis, Langley, Gardner & Banack, James E. Barden, San Antonio, for appellant.

Pat Maloney, San Antonio, for appellee.

CADENA, Justice.

Defendant, Southwestern Bell Telephone Company, appeals from a summary judgment awarding plaintiff, Oleta Gravitt, $80,000.00 in death benefits and a monthly pension in the sum of $586.84 on account of the death of her husband, T. O. Gravitt, who, at the time of his death, was defendant's employee. Plaintiff's claim is based on the provisions of defendant's "Plan for Employees' Pensions, Disability Benefits and Death Benefits" (referred to in this opinion as "the Plan").

The Plan provides for the payment of death benefits and pensions to surviving spouses of defendant's employees. It is administered, in accordance with written regulations, by an Employees' Benefit Committee (referred to in this opinion as "the Committee"), consisting of five persons who are appointed by, and serve during the pleasure of defendant's Board of Directors. The Plan is non-contributory in the sense that the employees make no contributions to the fund out of which the payments called for by the Plan are made. However, today it is settled that the lack of employee monetary contributions does not convert the payments called for by retirement and pension plans into mere gratuities bestowed by a generous employer. Such plans create con-

tractual rights and obligations, and are regarded as a mode of employee compensation. *Lee v. Lee,* 112 Tex. 392, 247 S.W. 828 (1923); *Mora v. Mora,* 429 S.W.2d 660 (Tex. Civ.App.—San Antonio 1968, writ dism'd).

Shortly after the death of plaintiff's husband, the Committee approved payment to plaintiff of $80,000.00 in death benefits, as well as a pension in the amount of $586.84 per month.[1] On November 15, 1974, after the Committee's decision but before any payments were made to her in accordance with the Committee's decision, plaintiff, joined by two surviving children of the decedent, filed suit against defendant seeking recovery under our wrongful death statute (Art. 4671, Tex.Rev.Civ.Stat.Ann.), of damages for the death of T. O. Gravitt, alleging that defendant wrongfully caused his death.

Following the filing of the wrongful death action, the Committee rescinded its prior action and, by letter, informed plaintiff that, because of the wrongful death action filed against defendant, "it will not be possible to pay the one-year Death Benefit at this time." This action by the Committee was based on the provisions of Paragraphs 25 and 26 of Section 8 of the regulations governing the administration of the Plan. These paragraphs read as follows:

25. Should claim other than under these Regulations be presented or suit brought against the Company . . . , for damages on account of injury or death of an employee, nothing shall be payable under these Regulations on account of such injury or death except as provided in Paragraph 26 of this Section; provided, however, that the Committee may, in its discretion and upon such terms as it may prescribe, waive this provision if such claims be withdrawn or if such suits be discontinued.

26. In case any judgment is recovered against the Company or any settlement is made of any claim or suit on account of the injury or death of an employee, and the amount which would otherwise have been payable under these Regulations is greater than the amount paid on account of such judgment or settlement, the difference between the two amounts may, in the discretion of the Committee, be distributed to the beneficiaries who would have received benefits under these Regulations, except that no party to any such suit against the Company shall be entitled to any portion thereof.

Plaintiff filed the present suit on January 20, 1975. Her first amended original petition alleged four separately numbered causes of action. The first cause of action, captioned "Suit for Vested, Monthly Pension Benefits and Vested Death Benefits," alleges the death of plaintiff's husband, the approval of the payments of death benefits, and a monthly pension to plaintiff by the Committee, and the subsequent rescission of such approval. This count includes the assertion that Paragraphs 25 and 26, which formed the basis for the Committee's decision to withhold payment, constitute forfeiture provisions which are contrary to public policy.

The second cause of action is for declaratory judgment seeking, essentially, a declaration that Paragraphs 25 and 26 are unenforceable forfeiture provisions.

The third and fourth causes of action are not relevant to this appeal.

In addition to a general denial, defendant's answer, by way of a plea in abatement and allegations in the nature of an affirmative defense, contends that until plaintiff's wrongful death action is discontinued or disposed of by judgment or settlement "the Committee . . . cannot make a determination of the amount . . . of such death and pension benefits due Plaintiff" because, under the provisions of Paragraphs 25 and 26, "any benefit paid" under the Plan "shall be only the excess over any judgment or settlement of" the wrongful death suit.

---

1. Plaintiff has received $160,000.00 under a group life insurance policy. Her right to receive such payment is not in issue here.

The order granting plaintiff's motion for summary judgment declares that Paragraphs 25 and 26 "are void and unenforceable as against public policy insofar as they permit the withholding of benefits which a beneficiary of a deceased employee is entitled to receive . . . ." The order provides that plaintiff recover from defendant $80,000.00 as death benefits and orders defendant to pay to plaintiff a pension in the sum of $586.84 per month, effective August 1, 1978. Finally, the order effects a severance of that portion of plaintiff's cause of action "which is encompassed by this Summary Judgment" from the remainder of the cause of action set forth in plaintiff's petition.

The clear import of the language found in the paragraphs in question precludes the conclusion, for which defendant contends, that such paragraphs merely permit defendant to "offset," against the benefits otherwise payable under the Plan, whatever amount plaintiff may realize as a result of prosecuting her suit to judgment or effecting a settlement of her statutory claim for wrongful death.

Paragraph 25 clearly provides that, except as set out in Paragraph 26, no payment whatever may be made to plaintiff under the Plan unless her wrongful death action is "discontinued," in which event the Committee may, in its discretion, waive the bar to payment resulting from the filing of the suit. There is no language in this paragraph which can possibly be interpreted as providing that, as claimed by defendant, "any benefits paid [under the Plan] shall be only the excess over any judgment or settlement" of the suit.

Nor, unless we ignore the language used, it is possible to interpret Paragraph 26 as providing for an offset as far as plaintiff is concerned. Under that paragraph, if, as a result of a judgment rendered in, or settlement of, the suit, defendant is obligated to pay an amount less than the amount otherwise payable under the Plan, the Committee may elect to pay the difference to *beneficiaries who are not parties to the suit.* Since plaintiff is a party to the wrongful death action, she is not entitled to receive any payments whatever under the provisions of Paragraph 26.

Stated bluntly, Paragraphs 25 and 26 permit no payments under the Plan to plaintiff unless she completely relinquishes her right to recover for the wrongful death of her husband. If she prosecutes her suit to judgment, she receives nothing, even if the judgment denies her recovery. If she settles her claim, she receives nothing, irrespective of the amount paid to her by defendant under the terms of the settlement.

If the intention was simply to permit the Committee to pay the difference between the amount payable under the Plan and a lesser amount paid by defendant to plaintiff as a result of the rendition of a judgment in, or settlement of, the wrongful death suit, it would be extremely difficult to choose language more inappropriate for the purpose of giving expression to such intention. Instead of saying, "if, because of your suit, you receive, by way of judgment or settlement, an amount less than that to which you would be entitled under the Plan, the Committee may elect to pay you the difference," Paragraphs 25 and 26 simply declare, "If you press your claim to judgment or settlement you will receive none of the benefits provided for by the Plan."

It cannot be concluded that the language used in the paragraphs in question is merely the result of inept draftsmanship. Where the intention was to provide simply for set-off, the draftsman had no difficulty in choosing appropriate language. Paragraph 27 of the rules and regulations provides:

In case any benefit or pension, which the Committee shall determine to be of the same general character as a payment provided by the Plan, shall be payable under any law now in force or hereafter enacted to any employee of the Company, to his beneficiaries or to his annuitant under such law, the excess only, if any, of the amount prescribed in the Plan above the amount of such payment prescribed by law shall be payable under the plan;
. . . . .

There is a marked difference between this language, which unmistakably provides for offset, and the language found in Paragraphs 25 and 26.

It is not unusual to find in the rules and regulations governing the administration of pension plans language providing for a forfeiture, suspension, or other limitation of the rights or benefits accruing under such plans if the beneficiary engages in certain types of conduct. Our immediate concern is with the enforceability of such forfeiture provisions where their practical effect is to impose on employees, or on their beneficiaries under such plans, restraints which would be impossible to enforce if the restraint were embodied in a covenant by the employee to refrain from engaging in the described conduct.

■ It appears to be well settled that an employer cannot include in a contract of employment a provision relieving him of liability for his wrongful conduct which results in the death of his employee. 6A Corbin, Contracts § 1472, p. 592 (1961); 2 Restatement, Contracts § 573(1)(a) (1932). This rule has been followed in Texas. *Galveston, H. & S. A. Ry. Co. v. Pigott*, 54 Tex.Civ.App. 367, 116 S.W. 841 (San Antonio 1909, writ ref'd). Because of this judicial hostility to "no suit" covenants, express covenants by an employee purporting to waive his right to recover for future tortious conduct of his employer have been replaced by forfeiture provisions annexed to pension plans which, at the very least, have the effect of forcing the beneficiary to elect between accepting benefits under the plan or seeking judicial redress for the employer's tortious conduct.

The cases involving the validity of such provisions are relatively few, and most, if not all, of the decisions considering the problem were handed down prior to 1930. There can be no doubt that a clear majority of the courts which have considered the problem have held such forfeiture provisions valid. Annot. 12 A.L.R. 477 (1921).

Provisions of this type have taken several forms. Perhaps the most common form is a provision to the effect that acceptance of benefits under the plan shall operate as a discharge of the employer from liability for wrongful conduct resulting in injury to, or death of, the employee. Such a provision is generally upheld because, analytically, it is the acceptance of benefits under the plan which results in the discharge of an existing right, as opposed to an agreement exempting the employer from liability for future wrongdoing. *Eckman v. Chicago, B. & Q. R. Co.*, 169 Ill. 312, 48 N.E. 496 (1897); 15 Williston, Contracts § 1751A, pp. 161–62 (3d ed., Jaeger, 1972).

Most of the courts which have faced the problem have also upheld a clause providing that any suit seeking recovery of damages for injury to, or death of, an employee will bar recovery of benefits otherwise payable under the plan unless the suit is discontinued. *Koeller v. Chicago, B. & Q. R. Co.*, 88 Neb. 712, 130 N.W. 420 (1911).

Where the beneficiary files suit without having accepted benefits under the plan previously, it cannot, of course, be argued that there has, in effect, been a compromise of an existing cause of action by accepting benefits under the plan. Where prosecution of the suit is held to bar recovery of benefits under the plan, it has been said that the provision in question does not deprive the beneficiary of the right to sue for wrongful injury or death but merely "requires him to make his election either to take the benefits provided by [the plan], or prosecute an action to recover all of the damages which are the result of his injury." *Koeller, supra*, 130 N.W. at 422.

■ A somewhat analogous problem is presented where the forfeiture results from the fact that the employee, after terminating his employment, engages in competition with his former employer. It is well settled that a covenant, ancillary to a contract of employment, which embodies an agreement by an employee to refrain from competing with his employer upon termination of the employment will not be enforced if it unreasonably restricts the freedom of the employee, although in many jurisdictions, including Texas, the fact that the restraint is

unreasonable does not result in the denial of all relief to the employer. As pointed out in *Weatherford Oil Tool Co. v. Campbell,* 161 Tex. 310, 340 S.W.2d 950, 952 (1960), the cases "hold that although the territory or period stipulated by the parties may be unreasonable, a court of equity will nevertheless enforce the contract by granting an injunction restraining the [employee] from competing for a time and within an area that are reasonable under the circumstances."

Nevertheless, a majority of the courts will enforce a clause in a pension plan which declares that an employee participating in the plan will forfeit his pension rights if, following the termination of his employment, he engages in competition with his former employer. This is true even if the restraint, as written, is unrestricted as to time and area. *Dollgener v. Robertson Fleet Services, Inc.,* 527 S.W.2d 277 (Tex.Civ.App.—Waco 1975, writ ref'd, n. r. e.). In enforcing the forfeiture provision, the Texas court relied heavily on the following language from *Rochester Corp. v. Rochester,* 450 F.2d 118, 122–23 (4th Cir. 1971):

> The authorities, though, generally draw a clear and obvious distinction between restraints on competitive employment in employment contracts and in pension plans. The strong weight of authority holds that forfeitures for engaging in subsequent competitive employment, included in pension retirement plans, are valid, even though unrestricted in time or geography. The reasoning behind this conclusion is that the forfeiture, unlike the restraint included in the employment contract, is not a prohibition on the employee's engaging in competitive work but is merely a denial of the right to participate in the retirement plan if he does so engage.

The "clear and obvious distinction between restraints on competitive employment in employment contracts and in pension plans" is, in reality, not clear, not obvious, and more importantly, not relevant. Given the present judicial attitude toward pension plans and the nature of the rights and obligations created by such plans, it cannot be argued that such plans are not a part of the contract of employment. As far as a restraint on competition is concerned, the fact is that a restriction on an employee's freedom to engage in competition with his employer following termination of the employment is more likely to be enforced when the restraint is incorporated in the contract of employment, and less likely to be enforced if it is not included in such contract. 2 Restatement, Contracts §§ 515(e), 516(f). The courts considering the validity of provisions for forfeiture of pension rights brought about by a suit by the beneficiary against the employer apparently have not considered as controlling the fact that the forfeiture provision is contained in the pension plan rather than in the contract of employment. The distinction drawn in the cases involving forfeiture because of the competitive activities of the employee is clearly unsound insofar as it is based on whether the restraint is found in a "contract of employment" or in a pension plan.

The argument that a forfeiture provision is not a prohibition against the employee's engaging in the conduct which results in the forfeiture is unacceptable. It is based on the theory that the result of the forfeiture provision is merely to force the employee to elect between participation in the pension plan and engaging in the forfeiture-producing conduct. This conclusion is based on the universally accepted view that a promise creates an obligation to act in a certain manner, while a condition imposes no obligation but merely declares the result of such action on the rights of the actor. But this distinction is irrelevant where the problem involves a determination of whether or not the forfeiture provision is contrary to public policy rather than a determination of whether or not the actor has breached a contractual duty.

■ Bluntly stated, the "election" argument refuses to recognize the fact that, in law, there are such things as invalid and unenforceable conditions, as well as invalid

and unenforceable promises. The invalidity, on public policy grounds, of a restriction or restraint depends on the nature of such restriction or restraint, and not on whether it is expressed in the form of a promise or in the form of a condition which results in a divestiture of rights. 2 Restatement, Contracts § 512, comment d.

■■■■ For example, a general restraint on marriage is unenforceable whether the restraint results from a promise not to marry or from enforcement of a condition providing for forfeiture of rights in case of marriage. 17 C.J.S. Contracts § 233a. Another example is to be found in the application of the rule that a general restraint on the power of the owner of a vested fee simple estate to alienate his interest will not be enforced because it is contrary to public policy. The restraint upon alienation may take one of three forms. It may be embodied in a covenant by the holder of the fee simple not to convey. It may take the form of an express prohibition against alienation. Finally, the restraint may take the form of a provision for forfeiture should the owner attempt to transfer his interest. Whether the restraint is of the disabling type (a promise to transfer or an express prohibition of transfer) or of the forfeiture type is irrelevant. The restraint will not be enforced. 4 American Law of Property §§ 26.9–26.11, pp. 420, 421–24 (1952).

The "election" rationale leads to results which are not only absurd but socially undesirable. According to this theory, if A promises to pay B $10,000.00 annually in return for B's promise to take care of A during A's lifetime and to kill at least one governmental official annually, the agreement to murder would be held unenforceable as contrary to public policy. But if A promises to pay B $10,000.00 annually in return for B's promise to take care of A during A's lifetime, and adds a stipulation or "condition" to the effect that A will be under no obligation to pay unless B murders at least one governmental official annually, the election theory would compel the conclusion that since B is under no duty to murder the effect of the condition is

merely to put him to an election whether to murder or forego payment. No clever euphemism can disguise the hard, ugly fact that the creation of the "election" has as its purpose forcing B to commit murder annually in order to collect the money. Whatever the linguistic legerdemain employed, the result in either case is, to put it bluntly, "no murder, no money." The effect of the forfeiture provision involved in this case can also be simply stated: "No abandonment of your right to hold the employer liable for the death of your husband, no pension."

Some courts, admittedly a minority, have refused to make the distinction between a promise and a condition in determining whether the restraint violates public policy. With respect to forfeitures resulting from the fact that the employee has engaged in competition with his employer, it has been said, "it is substance, not form, that controls," and that such clauses reflect that the primary purpose of the forfeiture clause is to prohibit postemployment competition by the employee. *Holsen v. Marshall & Ilsley Bank,* 52 Wis.2d 281, 190 N.W.2d 189, 191 (1971). Under the minority view, for the purpose of determining whether there is a violation of public policy, the forfeiture clause is viewed as being no different from a covenant by which the employee agrees not to become employed by a rival company and to pay a penalty for doing so. *Food Fair Stores, Inc. v. Greeley,* 264 Md. 105, 285 A.2d 632, 638 (1972); *cf. Carson v. Sun Life Assurance Co. of Canada,* 56 Ga.App. 164, 192 S.E. 241, 242 (1937).

The same reasoning has been resorted to in order to invalidate provisions seeking to produce a forfeiture of rights for seeking recovery for personal injury resulting from the employer's negligence. In *Cameron, Joyce & Co. v. State Highway Commission,* 350 Mo. 389, 166 S.W.2d 458, 461 (1942), a provision imposing a penalty on the exercise of the right to seek redress for tortious personal injury was regarded, for the purpose of determining the public policy question, as a contract for immunity from the legal consequences of future torts.

The distinction between a promise or covenant on the one hand and a forfeiture provision on the other forms no acceptable basis for resolution of the public policy question. The majority view, which enforces forfeiture clauses similar to the one before us, is based on faulty reasoning resulting from an undue judicial enchantment with form and completely ignores the fact that, whatever the form of expression, the result is "no murder, no money." If a promise to murder is unenforceable, a contractual provision which penalizes a refusal to murder should be equally unenforceable, since, whatever the form used, the result is encouragement of murder.

■ It must be concluded that enforcement of the forfeiture provision in this case would be contrary to public policy.

Defendant insists that even if the forfeiture provision is unenforceable, the presence of material issues of fact compels the reversal of the order granting summary judgment in favor of plaintiff in this case.

The first asserted issue of fact concerns the amount of benefits payable under the Plan. Part of the argument urged in support of the contention that the amount payable to plaintiff is not conclusively established rests on the assumption that Paragraphs 25 and 26 create "express offset" provisions which make it impossible to determine the amount due plaintiff while the wrongful death action is pending. Since we have concluded that Paragraphs 25 and 26 constitute unenforceable provisions for forfeiture, rather than valid "offset" provisions, this argument is unpersuasive.

Defendant next calls our attention to Paragraph 27 of the rules and regulations in support of its contention that there exists an issue of material fact concerning the amount due plaintiff under the Plan. Defendant correctly points out that Paragraph 27, which has been set out above, permits the Committee to offset any recovery by plaintiff under the Workmen's Compensation Act. The contention is that, because of Paragraph 27, the amount due plaintiff under the Plan cannot be determined until the amount recovered by her under the Work-

men's Compensation Act is definitely known.

■ The right of offset is an affirmative defense. The burden of pleading such defense and of proving the facts necessary to support it are on the person asserting it. *American National Ins. Co. v. Fox*, 184 S.W.2d 937 (Tex.Civ.App.—Fort Worth 1944, writ ref'd, w. o. m.). It was, therefore, incumbent on defendant to come forward with summary judgment "evidence" which at least raise an issue of fact concerning the existence of the essential elements of the defense. There is nothing in the record before us which even suggests that defendant is covered by workmen's compensation insurance. There is nothing to indicate that plaintiff has made a claim for compensation or that, given the lapse of time, there is any possibility that she can make a claim. The burden was not on plaintiff "to negative" the defense plea. *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934 (Tex.1972); *Torres v. Western Casualty and Surety Co.*, 457 S.W.2d 50, 53 (Tex.1970).

The deposition of the Chairman of the Committee, in the form of answers to written interrogatories, has attached to it as an exhibit the minutes of the meeting of the Committee at which it was decided to withhold payment of benefits to plaintiff. The minutes reflect that the Committee decided to withhold payment of death benefits in the amount of $80,000.00 and a pension in the sum of $586.84 per month. At the hearing on the motion for summary judgment, the trial court, referring to these minutes, inquired of counsel for defendant whether the Committee had not determined that plaintiff was entitled to receive payments in the amounts stated in the minutes, but that payment was being withheld "solely" because of the provisions of Paragraphs 25 and 26. Counsel for defendant answered the question in the affirmative. The amounts payable to plaintiff were conclusively established. Once it has been determined that the "sole" reason for withholding payment to plaintiff is invalid, we clearly have final action by the Committee that

plaintiff is entitled to the amounts specified in the judgment.

The judgment of the trial court is affirmed.

KLINGEMAN, J., did not participate in the consideration or disposition of this case.