HARRIS v NEW HAVEN FOUNDRY, INC

Docket No. 58858. Submitted July 14, 1982, at Detroit.—Decided October 19, 1982.

Ned L. Harris worked for New Haven Foundry, Inc., from September, 1955, to February, 1974. He was officially terminated from work in April, 1974. He filed for disability pension benefits more than 13 months later claiming that he had stopped working due to chronic bronchitis, pulmonary emphysema, hypertension, and a number of other ailments. The pension committee unanimously denied his application claiming that it was untimely and that he should have applied for benefits before he left work. Harris filed suit against New Haven Foundry, Inc., and others in Macomb Circuit Court seeking to obtain the disability pension benefits. The court, Robert J. Chrzanowski, J., granted summary judgment in favor of plaintiff on the ground that the pension committee's interpretation of the eligibility provision of the pension plan was improper as a matter of law. Defendant appeals. *Held:*

The pension committee has created a new and unwritten requirement to bar claims for benefits and has therefore abused its discretion and violated the terms of the pension plan. The committee's decision is contrary to law and unreasonable.

Affirmed.

LABOR RELATIONS — COLLECTIVE BARGAINING — PENSION PLANS.

A decision by the trustees of a collectively bargained pension plan with respect to an applicant's eligibility for pension benefits may be reversed only where the decision is arbitrary or capricious, made in bad faith, not supported by substantial evidence, or contrary to law.

*Dietrich & Cassavaugh, P.C.* (by *William T. Spencer),* for plaintiff.

REFERENCE FOR POINTS IN HEADNOTE
48 Am Jur 2d, Labor and Labor Relations § 347.

*Glime, Daoust, Wilds, Rusing & Widlak* (by *Dennis R. Leduc)*, for New Haven Foundry, Inc.

*Lacey & Jones* (by *John Hayes)*, for New Haven Foundry Hourly Employees Retirement Income Plan Joint Committee in Charge of Administration.

Before: T. M. BURNS, P.J., and BEASLEY and C. W. SIMON,* JJ.

PER CURIAM. Defendants appeal as of right the trial court's order granting summary judgment for plaintiff.

Plaintiff worked full time for defendant New Haven Foundry from September 2, 1955, until February 22, 1974. He was officially terminated from work in April, 1974. Over 13 months later, he first filed for disability pension benefits claiming that he had stopped working due to chronic bronchitis, pulmonary emphysema, hypertension, and a number of other ailments. He claimed that he had been totally and permanently disabled from any employment since his last day at work.

On September 24, 1975, the pension committee unanimously denied plaintiff's application claiming that it was untimely and that instead, plaintiff should have applied for benefits before he left work.

The first issue in this case is the appropriate standard of review. Although the courts across the country have employed different terminologies in defining this standard, we will follow the Sixth Circuit's standard limiting review to "whether the decision of the Trustees is arbitrary or capricious, made in bad faith, not supported by substantial

---

* Circuit judge, sitting on the Court of Appeals by assignment.

evidence or contrary to law". *Hall v Mullins,* 621 F2d 253, 254 (CA 6, 1980). See also *Rehmar v Smith,* 555 F2d 1362, 1371 (CA 9, 1976). However, this standard does not preclude the reviewing court from determining the reasonableness of the trustee's interpretation. As such, an interpretation will be upheld unless it is unreasonable. *Gordon v ILWU-PMA Benefit Funds,* 616 F2d 433 (CA 9, 1980). A reviewing court may not substitute its own judgment for that of the trustees. *Gordon; Powers v Fisher Controls Co, Inc,* 246 NW2d 279 (Iowa, 1976). In fact, a court may not choose between two reasonable interpretations to see which is more reasonable. *Miniard v Lewis,* 128 US App DC 299; 387 F2d 864 (1967), *cert den* 393 US 873; 89 S Ct 166; 21 L Ed 2d 144 (1968). See also *Riley v Meba Pension Trust,* 570 F2d 406 (CA 2, 1977). The court is to look at a fair reading of the contract. *Bayles v Central States, Southeast & Southwest Areas Pension Fund,* 602 F2d 97 (CA 5, 1979).

Plaintiff's employment and his eligibility for pension benefits are governed by a collective-bargaining agreement. This agreement provides for a pension plan to be administered providing for old age and disability retirement income security to eligible employees. The crucial section in the agreement is article 2.3:

"An employee with ten (10) years or more of credited service who becomes totally and permanently disabled prior to reaching the age of sixty-five (65) and whose service has not been terminated prior thereto shall be eligible for a Disability Retirement Benefit. * * *"

Defendants argue that plaintiff was not eligible to receive benefits because he was not an "em-

ployee" within this section. "Employee" is defined as:

"1.4 'Employee' means a person who receives from the Company compensation for personal services as an employee on a full time basis regularly employed for twenty (20) or more hours per week (or five (5) or more months per year) who becomes a member of and remains within a Participating Unit which the Company has brought under and continued within this Plan.

\* \* \*

"Any employee on sick leave which commenced prior to the effective date of the Plan shall not be eligible for any benefits under the Plan unless he returns to active work after the effective date and meets the other eligibility requirements for said benefits."

Defendants are arguing that one cannot be an "employee" unless presently employed and that if the agreement had meant to include someone who is not presently employed, it would have used the word "participant".

However, we do not see how the use of the words "remains" and "receives" (present tense) shows an intention to restrict eligibility to those presently employed at the time that benefits are applied for. This article allows a person to qualify as an "employee" so long as he meets two conditions: (1) receiving full-time compensation and (2) becoming a member of and remaining within a participating unit. Nothing in this section's language suggests that these conditions need be fulfilled at any particular point in time—though they need be fulfilled at some time.

The crux of the matter, however, is article 2.3. Defendants argue that the words "service has not been terminated prior thereto" refers to an employee's having filed for eligibility. However, we do

not believe that this interpretation is reasonable. The provision made absolutely no reference to any requirement that a claimant apply for benefits before his termination from employment.

Article 4.3 states:

"Notwithstanding the provisions of Section 4.1 and 4.2 of this Article IV, no benefits shall be payable under the Plan with respect to any period which is more than six (6) months prior to the date application for such benefit is received by the Committee unless the Committee determines that there was good reason for the delay in filing of the application."

This is the only section that we have found in the agreement that discussed when an employee must file for benefits. It completely fails to state that the employee must file for benefits before leaving his employment.

Defendants argue that their interpretation requiring the employee to file before leaving the employment is reasonable because such an interpretation will deter stale or fraudulent claims. However, article 4.3 addresses this particular argument. As such, the only sanction for delayed applications is cutting off all benefits that would have been due more than six months before the application.

Article 5.7 of the union contract states in reference to the pension plan:

"The Committee shall have no power to add to or subtract from or modify any of the terms of this agreement or of the Plan nor to change or add to any benefit provided by said agreement or by the Plan nor to waive or fail to apply any requirements of eligibility for a benefit under said agreement or of the Plan."

We believe that the committee has created a new

and unwritten requirement to bar claims for benefits and has therefore abused its discretion and violated the terms of the plan. As such, we believe that the committee's decision is contrary to law and unreasonable.

Affirmed.