SEDMAN v MICHIGAN BELL TELEPHONE CO

Docket No. 62555. Submitted January 18, 1983, at Detroit.—Decided
  May 17, 1983.

  In 1972, Morton Sedman, a management employee with Michigan
    Bell Telephone Company, brought, along with his wife Millie, a
    medical malpractice suit against Michigan Bell for Michigan
    Bell's alleged failure to diagnose Morton Sedman's cancer.
    Morton Sedman died in 1972, and the malpractice suit was
    settled in 1976 for $200,000. Millie Sedman and Sylvia and
    Miriam Sedman, daughters of Morton and Millie Sedman,
    sought pension and death benefits under an employee benefit
    plan maintained by Michigan Bell for its employees. The re-
    quested benefits were denied by the committee charged with
    the responsibility of operating the plan on the basis that, under
    the provisions of the plan, such benefits could be denied where
    a suit had been brought against the company. Millie Sedman,
    individually and as guardian for Miriam, and Sylvia Sedman
    brought an action in Wayne Circuit Court seeking payment of
    the requested benefits from Michigan Bell Telephone Company.
    Defendant moved for summary judgment on the basis that the
    good faith decision of the employee benefit committee cannot be

REFERENCES FOR POINTS IN HEADNOTES
[1] Am Jur 2d, New Topic Service, Pension Reform Act § 200.
  60 Am Jur 2d, Pensions and Retirement Funds § 77.
  Rights and liabilities as between employer and employee with
    respect to general pension or retirement plan. 42 ALR2d 461.
[2] 5 Am Jur 2d, Appeal and Error § 873.
  16 Am Jur 2d, Constitutional Law §§ 70, 245.
  20 Am Jur 2d, Courts § 64.
  73 Am Jur 2d, Statutes §§ 153, 205, 281.
[3] 60 Am Jur 2d, Pensions and Retirement Funds §§ 47-50, 74.
  Vested right of pensioner to pension. 52 ALR2d 437.
[4, 7] Am Jur 2d, New Topic Service, Pension Reform Act § 92 *et seq.*
  60 Am Jur 2d, Pensions and Retirement Funds § 79.
[5] Am Jur 2d, New Topic Service, Pension Reform Act §§ 516, 530.
  What constitutes "pension" within meaning of federal statutes
    excluding actions or claims for pensions from jurisdiction of
    federal courts. 40 ALR2d 646.
[6] 60 Am Jur 2d, Pensions and Retirement Funds § 85.

judicially disturbed. Plaintiffs moved for summary judgment on the basis that they qualified for the benefits but for the provision permitting denial of benefits upon bringing suit and that said provision was void as contrary to public policy. Theodore R. Bohn, J., denied defendant's motion for summary judgment and granted plaintiffs' motion, holding that the provisions relied upon by defendant acted as an impermissible forfeiture as applied to the pension benefits and, therefore, declared as void as against public policy the provisions of the benefit plan which permitted the denial of benefits under the plan if a suit against the company had been brought. Defendant appeals. *Held:*

1. Since the plan's provisions provided for the denial of pension benefits upon the bringing of any suit, the effect was to provide for a forfeiture of pension rights and thereby immunize the employer for suits by its employees or those claiming through the employees. Such forfeiture of pension benefits is contrary to public policy.

2. The claimed benefits payable to the surviving spouse are pension benefits rather than merely a death benefit, since the plan provides that the surviving spouse shall be paid benefits equal to the pension benefits that would have been payable to the employee had he been retired on the date of his death.

3. As to the pension benefits the provisions of the plan cannot be said to be merely an election of remedies since the nature of the recovery in the malpractice suit, that being to provide compensation for a tortious wrong by the employer, has nothing in common with the nature of the pension benefits, which are in the nature of deferred wages.

4. The provisions as written cannot be said to be merely a setoff provision, since the bringing of the suit extinguishes the right to any pension benefits rather than merely offsetting the recovery in the suit against the pension benefits.

Affirmed.

1. LABOR RELATIONS — PENSION PLANS — ELIGIBILITY FOR BENEFITS — JUDICIAL REVIEW.

Judicial review of a decision relative to the question of eligibility for benefits by a committee charged with the responsibility of administering a company pension plan is limited to determining whether the committee's decision is arbitrary or capricious, made in bad faith, not supported by substantial evidence, or erroneous as a matter of law.

2. COURTS — PUBLIC POLICY.
   The determination of what is public policy requires a court to advert to constitutions, statutes, and judicial proceedings.

3. CONTRACTS — PENSION PLANS.
   Pension plans constitute enforceable contracts.

4. CONTRACTS — PENSION PLANS — FORFEITURE OF PENSION BENEFITS — PUBLIC POLICY.
   Forfeiture provisions in pension plans are to be liberally interpreted in favor of the employee; public policy requires that the provisions of a pension plan be construed, where possible, to avoid forfeiture.

5. LABOR RELATIONS — PENSION PLANS — CONTRACTS — PUBLIC POLICY.
   An employer may not include in a pension plan a provision which permits the denial of pension benefits if an employee seeks to enforce a legal right by way of a suit in a court of law, since it is contrary to public policy for an employer to include a provision which has the effect of immunizing the employer from liability for its own wrongdoing.

6. CONTRACTS — PENSION PLANS — SURVIVING SPOUSE.
   Benefits payable to the spouse of a deceased employee under a provision in a company benefit plan whereby a surviving spouse is entitled to receive the amounts that would have been payable as a pension to the employee had the employee been retired on the date of his death are pension benefits rather than death benefits.

7. CONTRACTS — PENSION PLANS — ELECTION OF REMEDIES — FORFEITURE OF PENSION BENEFITS — TORTS.
   The term "election of remedies" implies a choice of types of compensation for the same loss or wrong; the loss of pension benefits if a tort claim is sought from the employer amounts to a forfeiture of the pension benefits rather than merely an election of remedies, since pension benefits, which are a contractual form of deferred compensation, differ in nature from a recovery for a tort claim based upon a wrongful act by the employer.

8. CONTRACTS — PENSION PLANS — SETOFFS — FORFEITURE OF PENSION BENEFITS.
   A provision in a pension plan which permits the complete denial of pension benefits if the employee shall bring a suit against the employer amounts to a forfeiture provision rather than

merely a setoff provision, since the nature of the provision goes to the right to claim any pension benefits after a suit has been brought rather than merely offsetting the amount of the recovery in the suit against the pension benefits which would otherwise be payable.

*Kelman, Loria, Downing, Schneider & Simpson* (by *Ann Curry Thompson*), for plaintiffs.

*Nancy L. Davis,* for defendant.

Before: T. M. BURNS, P.J., and R. M. MAHER and HOOD, JJ.

T. M. BURNS, P.J. On January 25, 1982, the trial judge granted plaintiffs' motion for summary judgment and denied defendant's motion for summary judgment. Defendant appeals as of right.

In 1972, Morton Sedman, a management employee for defendant for the prior 25 years, along with his wife, plaintiff Millie Sedman, sued defendant for medical malpractice. Allegedly, defendant had failed to diagnose Morton's cancer. On June 26, 1972, Morton Sedman died. The suit was settled in 1976 for $200,000.

Eventually, plaintiff Millie Sedman and plaintiffs Sylvia and Miriam Sedman (Morton and Millie's daughters) requested benefits under defendant's "Plan for Employees' Pensions, Disability Benefits and Death Benefits". Section 4, ¶ 3(c) of the provisions of the plan states:

"In the event of the death on or after October 1, 1971, prior to retirement of an employee who is entitled to retire at his own request as specified in Paragraph 1(a) of this Section, and who has a surviving spouse, such surviving spouse shall be entitled to receive the amounts payable to the annuitant as if such employee had been retired on service pension, for reasons other than total disability as a result of sickness or of injury,

on the date of his death. Except as provided in this Paragraph 3(c), no pension payment shall be made to the annuitant of an employee if such employee dies prior to retirement."

Section 7, ¶ 2 states:

"In the event of the death of any employee, occurring on or after April 1, 1967, and resulting from sickness as defined in Paragraph 1 of Section 6 of these Regulations, hereinafter referred to as death by sickness, there may be paid (and in the circumstances described in subparagraph 4(a) of this Section, there shall be paid) a Sickness Death Benefit which shall not be in excess of Five Hundred Dollars ($500), or twelve (12) months' wages, whichever is greater.

"Payment of the Sickness Death Benefit, subject to the conditions imposed in Paragraph 5 of this Section and elsewhere in these Regulations, shall be made to the employees' beneficiaries, as provided in Paragraph 4 of this Section."

Section 7, ¶ 4(a) states:

"In the event of death on or after October 1, 1971, by accident the maximum Accident Death Benefit specified in Paragraph 1 of this Section, or in the event of death by sickness on or after the above date, the maximum Sickness Death Benefit specified in Paragraph 2 of this Section, shall be paid, subject to the provisions of subparagraph (c) of this Paragraph 4, to the spouse of the deceased employee if living with him at the time of his death, or to the child or children of the deceased employee under the age of eighteen years (or over that age if physically or mentally incapable of self-support) who were actually supported in whole or in part by the deceased employee at the time of his death. If the employee leaves both spouse and a child or children, as here described, the Committee, in its discretion, may pay the Death Benefit to or for any one or more of such possible beneficiaries in such portions as it may determine."

However, defendant refused plaintiffs' claim stating that because plaintiffs had sued for malpractice they were not entitled to any benefits under the plan. Section 8, ¶ 25 states:

"Should claim other than under these Regulations be presented or suit brought against the Company or against any other company with which arrangements have been made, directly or indirectly, for interchange of benefit obligations, as described in Section 9 of these Regulations, for damages on account of injury or death of an employee, nothing shall be payable under these Regulations on account of such injury or death except as provided in Paragraph 26 of this Section; provided, however, that the Committee may, in its discretion and upon such terms as it may prescribe, waive this provision if such claims be withdrawn or if such suit be discontinued."

Section 8, ¶ 26 states:

"In case any judgment is recovered against the Company or any settlement is made of any claim or suit on account of the injury or death of an employee, and the amount which would otherwise have been payable under these Regulations is greater than the amount paid on account of such judgment or settlement, the difference between the two amounts may, in the discretion of the Committee, be distributed to the beneficiaries who would have received benefits under these Regulations, except that no party to any such suit against the Company shall be entitled to any portion thereof."

The trial court held that § 8, ¶¶ 25 and 26 constituted an impermissible forfeiture of the pension rights guaranteed in § 4 because such a forfeiture violates public policy. On the other hand, § 8, ¶¶ 25 and 26 constituted a permissible election of remedy provision when applied to § 7. However, because these two paragraphs had just been declared

void, the trial court declared that plaintiffs were entitled to recover under both §§ 4 and 7. Defendant appeals only the decision that the two paragraphs constitute an impermissible forfeiture.[1]

We agree with the trial judge. In reviewing a pension committee's decision, this Court's review is limited to whether or not the committee's decision is arbitrary or capricious, made in bad faith, not supported by substantial evidence, or erroneous as a matter of law. *Harris v New Haven Foundry, Inc,* 120 Mich App 629; 327 NW2d 540 (1982). In this case, the committee's decision was wrong as a matter of law.

Paragraphs 25 and 26 of § 8 violates public policy. Public policy is derived from constitutions, statutes, and judicial proceedings. *St Helen Shooting Club v Mogle,* 234 Mich 60, 71-72; 207 NW 915 (1926). Even though this case is not governed by ERISA, we find it helpful. In enacting it, Congress recognized that:

"[T]he growth in size, scope and numbers of employee benefit plans in recent years has been rapid and substantial; * * * the continued well-being and security of millions of employees and their dependents are directly affected by these plans; * * * they have become an important factor affecting the stability of employment and the successful development of industrial relations * * *." 29 USC 1001(a).

Pension plans constitute enforceable contracts. *Psutka v Michigan Alkali Co,* 274 Mich 318; 264 NW 385 (1936); *Couch v Administrative Committee of Difco Laboratories, Inc, Salaried Employees Profit Sharing Trust,* 44 Mich App 44; 205 NW2d

[1] Because this case arose before January 1, 1975, the Employee Retirement Income Security Act (ERISA), 29 USC 1001 *et seq.,* does not apply. ERISA presently pre-empts state law on this subject. 29 USC 1144.

24 (1972). Forfeiture provisions in pension plans are to be liberally interpreted in favor of the employee. *Hart v United Brotherhood of Carpenters & Joiners of America Local No 626,* 352 A2d 423 (Del Super, 1976); *Paddock Pool Construction Co v Monseur,* 23 Ariz App 451; 533 P2d 1188 (1975). In fact, public policy requires that pension plans be construed, where possible, to avoid forfeiture. *Hoefel v Atlas Tack Corp,* 581 F2d 1 (CA 1, 1978), *cert den* 440 US 913; 99 S Ct 1227; 59 L Ed 2d 462 (1979). Furthermore, ERISA has outlawed certain forfeitures. 29 USC 1053. ERISA's general objective is to increase the number of people in such plans and to assure that those who are presently participating not lose benefits through unduly restricted forfeiture provisions. *In re C D Moyer Co Trust Fund,* 441 F Supp 1128 (ED Pa, 1977), *aff'd* 582 F2d 1273 (CA 3, 1978).

The court in *Southwestern Bell Telephone Co v Gravitt,* 551 SW2d 421, 425 (Tex Civ App, 1976),[2] was faced with the same question as this case. In ruling that a contract very similar to the present one violates public policy, the court stated:

"It appears to be well settled that an employer cannot include in a contract of employment a provision relieving him of liability for his wrongful conduct which results in the death of his employee."

In effect, defendant is immunizing itself from its own wrongdoing. The way the contract reads, if one of defendant's employees were to be discriminated against by defendant because of race or religion or even a handicap, the employee would be able to enforce his rights in court only if he decides to forego his pension. Such a result is

---

[2] The Texas Supreme Court has refused application for writ of error in this case: no reversible error.

clearly unjust. Furthermore, what is the difference between a clause which forfeits pension rights and a clause which states that an employee forfeits his right to wages if he has sued the employer for some harm not directly related to the wages themselves? No one would doubt that an employment contract provision providing for the forfeiture of wages upon the bringing of a suit would be unconscionable.

Defendant, on the other hand, argues that the plan is not even a pension plan. Under this plan the benefit is paid to the employee's spouse only when an active employee dies, the employee at the time of his death met certain age and service requirements, and the employee is survived by a spouse who meets certain plan requirements. However, this plan really is a pension. First, the plan itself describes the benefits provided under § 4 as a "service pension". In fact, the full title of the plan is "Plan for Employees' *Pension,* Disability Benefits and Death Benefits" (emphasis added). Sections 1 and 2 of the plan are introductory; § 3 creates the employees' benefit committee; § 4 regulates pension benefits distribution; §§ 5 and 6 regulate accident and sickness disability benefits distribution; and § 7 regulates death benefits distribution. Furthermore, § 4 clearly shows that entitlement to both pension and other benefits is conditioned upon the length of the employee's service. ERISA has defined a pension plan as:

"[A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—

"(A) provides retirement income to employees, or

"(B) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contribution made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan." 29 USC 1002(2).

Defendant also argues that § 8, ¶¶ 25 and 26 do not constitute a forfeiture. First, it argues that they rather constitute an election of remedies which does not require the employee to forfeit benefits but merely to choose between one of two compensation forms. In fact, an employment contract may have a provision stating that the employee forfeits his pension if he later works for a competitor. *Woodward v Cadillac Overall Supply Co*, 396 Mich 379; 240 NW2d 710 (1976); *Saginaw Joint Venture v Elias Brothers Restaurants, Inc*, 106 Mich App 274; 307 NW2d 759 (1981), *lv den* 413 Mich 856 (1982). However, an employer's legitimate interest in discouraging his own experienced workers from retiring early and collecting benefits while simultaneously providing skilled and experienced labor to his competitors is not present in this case. Defendant has no legitimate interest in discouraging its employees from filing warranted lawsuits against it for medical malpractice.

Paragraphs 25 and 26 of § 8 cannot be called election of remedy provisions when applied to § 4. The term "election of remedies" implies compensation for the same loss or wrong. A pension benefit is a deferred wage intended to compensate an employee at retirement. Whether or not the employee died before retirement is relevant in this case only in determining the beneficiary's identity and not in determining the nature of the loss compensated. On the other hand, a medical malpractice action compensates not only lost wages

but also costs and damages for mental and emotional stress, loss of companionship, and loss of consortium, among other things. Therefore, this "election of remedies" is really an election of which particular loss will in fact be compensated.

Defendant next argues that ¶¶ 25 and 26 of § 8 do not really constitute a forfeiture but rather a setoff. Even under ERISA, setoffs are permissible. *Alessi v Raybestos-Manhattan, Inc,* 451 US 504; 101 S Ct 1895; 68 L Ed 2d 402 (1981). See also *Fielder v Travelers Ins Co,* 79 Mich App 449; 263 NW2d 9 (1977); *Soper v St Regis Paper Co,* 411 A2d 1004 (Me, 1980); *Bunney v Standard Oil Co,* 571 P2d 981 (Wy, 1977).

However, the present paragraphs are not setoff provisions. In *Southwestern Bell,* the court stated:

"The clear import of the language found in the paragraphs in question precludes the conclusion, for which defendant contends, that such paragraphs merely permit defendant to 'offset', against the benefits otherwise payable under the Plan, whatever amount plaintiff may realize as a result of prosecuting her suit to judgment or effecting a settlement of her statutory claim for wrongful death.

\* \* \*

"Stated bluntly, Paragraphs 25 and 26 permit no payments under the Plan to plaintiff unless she completely relinquishes her right to recover for the wrongful death of her husband. If she prosecutes her suit to judgment, she receives nothing, even if the judgment denies her recovery. If she settles her claim, she receives nothing, irrespective of the amount paid to her by defendant under the terms of the settlement.

"If the intention was simply to permit the Committee to pay the difference between the amount payable under the Plan and a lesser amount paid by defendant to plaintiff as a result of the rendition of a judgment in, or settlement of, the wrongful death suit, it would be extremely difficult to choose language more inappropri-

ate for the purpose of giving expression to such intention. Instead of saying, 'if, because of your suit, you receive, by way of judgment or settlement, an amount less than that to which you may be entitled under the Plan, the Committee may elect to pay you the difference,' Paragraphs 25 and 26 simply declare, 'If you press your claim to judgment or settlement you will receive none of the benefits provided for by the Plan.'" 551 SW2d 424.

Defendant lastly argues that § 8, ¶¶ 25 and 26 no more than allow the committee to integrate plaintiffs' pension funds with their medical malpractice settlement funds. Integration is a calculation practice whereby pension benefit levels are determined by combining pension funds with other income streams available to the retired employee so that the total income maintenance payments received by employees and their beneficiaries will not exceed their pension level. *Alessi, supra,* 451 US 514-515. However, *Alessi,* in approving integration, presumed that pension benefits would only be offset and not forfeited by other sources of income.

Affirmed.